

**David E. Gottlieb**
dgottlieb@wigdorlaw.com

November 27, 2023

**VIA ECF**
The Honorable Paul A. Crotty
Southern District of New York
500 Pearl Street
New York, New York 10007

   Re:  Trotter v. The National Football League, et al., No. 23 Civ. 08055 (PAC)

Dear Judge Crotty,

  We represent Plaintiff Jim Trotter and write in opposition to Defendants' proposed motion to dismiss.  See Dkt. No. 21.  Defendants ignore the allegations of the Complaint and are flat-out wrong on the law.  Moreover, Defendants' position is morally abhorrent—the NFL literally takes the position that it is *permitted* to terminate an employee for raising complaints about an employer's lack of racial inclusion.  Respectfully, the Court should denounce such a proposition.

**I.**  **Allegations of the Complaint**

  Mr. Trotter observed an array of discrimination working at the NFL including, *inter alia*, racist and discriminatory conduct by management (Dkt. No. 1 at ¶¶23-67, 110-133), acquiescence to racist conduct (¶¶10, 35, 121, 128-132), lack of racial diversity in management (¶¶97-102), and silencing of discrimination complainants (¶¶3, 29-34).  The NFL also has a well-known history with race discrimination.  Id. at §I.  Mr. Trotter raised several complaints about discrimination during his tenure.  ¶¶120, 128, 148, 156, §I.

  In February 2022, the NFL was very publicly sued for systemic discrimination against Black coaches in Flores, et al. v. NFL, et al., No. 22 Civ. 00871 (VEC).  Id. at §F.  Days later, given Mr. Trotter's own experience, Mr. Trotter confronted the NFL Commissioner.  Mr. Trotter

**WIGDOR.**

Hon. Paul A. Crotty
November 27, 2023
Page 2

challenged Roger Goodell, stating that Flores was indicative of a systemic problem manifesting itself also in NFL Media by a failure to hire or promote Black senior-level employees in the newsroom.  ¶136 (e.g. "why does the NFL and its owners have such a difficult time at the highest levels hiring Black people into decision making positions").  One year later, in February 2023, Mr. Trotter called Mr. Goodell out again about these same concerns.  ¶187.

 On March 2, 2023, NFL employee Sandra Nunez, gave Mr. Trotter an ultimatum and asked whether he was "in alignment" with the NFL.  Mr. Trotter said he was not given the NFL's lack of inclusivity of Black employees *and recounted examples of race discrimination in the NFL*.  ¶¶197-205.  On March 12, 2023, Mr. Trotter reported further retaliation.  ¶209.  Eight days later, Mr. Trotter was told his contract would not be renewed.  ¶211.

This was an abrupt change.  Mr. Trotter is among the most decorated football journalists of his generation.  In November 2022, Mr. Trotter's agent was told by Ms. Nunez that she could not envision any reason why his contract would not be renewed.  ¶¶178-180.  That all changed after Mr. Trotter engaged in protected activity.  ¶212.

II.      **Defendants' Argument that Mr. Trotter Has Not Alleged Retaliation Is Utterly Futile**

Defendants baselessly argue that Mr. Trotter has not alleged protected activity.  First, Mr. Trotter complained repeatedly about discriminatory conduct, including about racist comments by NFL team owners.  Second, Mr. Trotter twice confronted Mr. Goodell about the NFL's failure to hire or promote Black employees in senior-level positions.[1]  The law prohibits failure to hire or promote on the basis of race.  See e.g. 42 U.S.C. 2000e-2(a).  Third, in those complaints, Mr. Trotter drew comparisons to the Flores discrimination lawsuit.  ¶¶136, 187.  Fourth, Mr. Goodell

---

[1]      The laws prohibit failure to hire or promote on the basis of race.  See e.g. 42 U.S.C. 2000e-2(a).

understood that Mr. Trotter was raising concerns about the NFL's practices having a disparate impact on Black employees as Mr. Goodell *responded* by confirming that the NFL had been "looking at how do we become more effective in our policies and our procedures."[2] ¶¶137, 188. Fifth, Mr. Trotter told Ms. Nunez that he was "not aligned" with NFL Media's failure to hire or promote Black employees into senior positions and reported racist conduct by team owners. Clearly Mr. Trotter has alleged that he opposed discriminatory conduct.[3]

Defendants are wrong that Mr. Trotter has not alleged "but for" causation. It is well known that "'but-for' causation does not . . . require proof that retaliation was the only cause of the employer's action, but only that the adverse action would not have occurred in the absence of the retaliatory motive." Duplan v. City of New York, 888 F.3d 612, 625 (2d Cir. 2018). Mr. Trotter's claims cannot be dismissed just because Defendants claim to have some "defense."

### III. Mr. Trotter Has Easily Pleaded a Racially Hostile Work Environment

Mr. Trotter has alleged a racially hostile environment. Against a long history of discrimination, Mr. Trotter has alleged racist conduct by his employer, acquiescence to such conduct, and directions not to publicly disclose racist employer conduct. At the pleading stage, this is more than sufficient. See e.g. Harding v. Dorilton Cap. Adv. LLC, 635 F. Supp. 3d 286, 301 (S.D.N.Y. 2022) ("hostile work environment [claim] involves a question of fact and is generally inappropriate to determine at the pleadings stage of a litigation.").[4]

---

[2] The Flores lawsuit alleges a disparate impact with respect to the lack of Black representation in coaching and executive positions due to, *inter alia*, the lack of racial diversity in team ownership and senior-level positions.

[3] Even if Defendants were correct (which they are not) that Mr. Trotter *merely* raised complaints about a "lack of racial diversity," his complaints are still sufficient. See e.g. Soto v. Marist Coll., No. 17 Civ. 7976 (KMK), 2019 WL 2371713, at *10 (S.D.N.Y. June 5, 2019) ("Plaintiff was arguably 'protesting against discrimination by industry or by society in general' by discussing the lack of diversity at Marist with his class.").

[4] Mr. Trotter has sufficiently alleged claims under New York State and City law by virtue of having performed work in New York City and the NFL's league office operating from and making employment decisions out of New York. Mr. Trotter's contract also dictates that New York law will govern his employment.



Hon. Paul A. Crotty  
November 27, 2023  
Page 4

## IV.     Defendants Should Not Be Rewarded with a Stay for Filing a Frivolous Motion

"A stay is not appropriate simply on the basis that a motion to dismiss has been filed." In re Currency Conversion Fee Antitrust Litig., No. MDL 1409, M21-95, 2002 WL 88278, at *1 (S.D.N.Y. Jan. 22, 2002).  The burden rests on the moving party to establish factors such as (1) whether the defendant has made a "strong showing" that the plaintiff's claim is unmeritorious, (2) the breadth and burden of discovery, and (3) prejudice to the opposing party.  Id.  Defendants have failed to establish any of these factors.

Respectfully submitted,

David Gottlieb