**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**

JIM TROTTER,

        Plaintiff,

 v.

THE NATIONAL FOOTBALL LEAGUE; NFL
ENTERPRISES LLC; AND NFL NETWORK
SERVICES, INC.,

        Defendants.

C.A. No. 23-cv-08055-PAC

**ORAL ARGUMENT
REQUESTED**

**MEMORANDUM OF LAW IN SUPPORT OF**
**<u>NFL DEFENDANTS' MOTION TO DISMISS THE COMPLAINT</u>**

# **TABLE OF CONTENTS**

TABLE OF CONTENTS ............................................................................................................. i

PRELIMINARY STATEMENT ............................................................................................... 1

BACKGROUND ....................................................................................................................... 3

      A.     The NFL Defendants ........................................................................................ 3

      B.     Plaintiff ............................................................................................................ 5

      C.     The Complaint ................................................................................................. 5

ARGUMENT ............................................................................................................................ 9

I.       Mr. Trotter's Retaliation Claims Should Be Dismissed ..................................... 9

      A.     Mr. Trotter Fails to State a Retaliation Claim Under § 1981 ............................... 9

      B.     Mr. Trotter Fails to State a Retaliation Claim Under the NYSHRL or the NYCHRL ....................................................................................................... 16

II.     Mr. Trotter's Discrimination Claims Should Be Dismissed ............................... 18

      A.     Mr. Trotter Fails to State a Race Discrimination Claim Under § 1981 ............... 18

      B.     Mr. Trotter Fails to State a Race Discrimination Claim Under the NYSHRL or the NYCHRL ..................................................................................... 22

III.    Mr. Trotter's NYSHRL and NYCHRL Claims Should Be Dismissed For Failure to Allege the Requisite Impact in New York State and New York City ............................. 23

IV.    In the Alternative, the Court Should Decline to Exercise Supplemental Jurisdiction Over Mr. Trotter's NYSHRL and NYCHRL Claims ...................................................... 25

CONCLUSION ........................................................................................................................ 26

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*Acosta* v. *City of New York*,
   2012 WL 1506954 (S.D.N.Y. Apr. 26, 2012) ................................................................... 19, 20

*Alfano* v. *Costello*,
   294 F.3d 365 (2d Cir. 2002) ................................................................................................ 21

*Am. Needle, Inc.* v. *NFL*,
   560 U.S. 183 (2010) ............................................................................................................... 3

*Ashcroft* v. *Iqbal*,
   556 U.S. 662 (2009) ............................................................................................................... 9

*Atkinson* v. *Singh*,
   2022 WL 137634 (S.D.N.Y. Jan. 14 2022) ......................................................................... 17

*Baker* v. *MTA Bus Co.*,
   2023 WL 4896686 (S.D.N.Y. Aug. 1, 2023) ....................................................................... 22

*Bamba* v. *Fenton*,
   758 F. App'x 8 (2d Cir. Dec. 4, 2018) ................................................................................. 13

*Bell Atl. Corp.* v. *Twombly*,
   550 U.S. 544 (2007) ............................................................................................................... 9

*Branch* v. *Sony Music Ent. Inc.*,
   2001 WL 228108 (S.D.N.Y. Mar. 8, 2001), *aff'd*, 34 F. App'x 23 (2d Cir.
   2002) ..................................................................................................................................... 11

*Briggs* v. *SCO Fam. of Servs.*,
   2023 WL 3589896 (2d Cir. May 23, 2023) ......................................................................... 14

*Byerly* v. *Ithaca Coll.*,
   290 F. Supp. 2d 301 (N.D.N.Y. 2003), *aff'd*, 113 F. App'x 418 (2d Cir. 2004) ................ 11

*Calise* v. *N.Y.S. Dep't of Motor Vehicles*,
   2018 WL 4350247 (S.D.N.Y. Sept. 12, 2018) ..................................................................... 22

*Cardwell* v. *Davis Polk & Wardwell LLP*,
   2021 WL 4434935 (S.D.N.Y. Sept. 23, 2021) ..................................................................... 13

*Cardwell* v. *David Polk & Wardwell LLP*,
    2020 WL 6274826 (S.D.N.Y. Oct. 24, 2020) ................................................17, 23

*Colon* v. *N.Y.C. Hous. Auth.*,
    2021 WL 2159758 (S.D.N.Y. May 26, 2021) ................................................15, 17

*Comcast Corp.* v. *Nat'l Assoc. of Afr. Am.-Owned Media*,
    140 S. Ct. 1009 (2020) ........................................................................................19

*Daniels* v. *City of N.Y.*,
    2019 WL 251511 (S.D.N.Y. Jan. 17, 2019) ........................................................19

*E.E.O.C.* v. *Bloomberg, L.P.*,
    967 F. Supp. 2d 816 (S.D.N.Y. 2013)..................................................................24

*Fernandez* v. *City of N.Y.*,
    2012 WL 2402642 (S.D.N.Y. June 26, 2012) .....................................................18

*Fincher* v. *Depository Tr. & Clearing Corp.*,
    604 F.3d 712 (2d Cir. 2010)................................................................................23

*Flores* v. *NFL*,
    No. 1:22-cv-00871-VEC (S.D.N.Y. 2023) ............................................................8

*Fried* v. *LVI Servs., Inc.*,
    2011 WL 4633985 (S.D.N.Y. Oct. 4, 2011) .......................................................24

*Gaddy* v. *Waterfront Comm'n*,
    2014 WL 4739890 (S.D.N.Y. Sept. 19, 2014).....................................................18

*Gatling* v. *West*,
    850 F. App'x 91 (2d Cir. 2021) ..........................................................................19

*Green* v. *Mount Sinai Health Sys., Inc.*,
    2019 WL 4392691 (S.D.N.Y. Sept. 12, 2019), *aff'd*, 826 F. App'x 124 (2d
    Cir. 2020) ............................................................................................................14

*Henry* v. *N.Y.C. Health & Hosp. Corp.*,
    18 F. Supp. 3d 396 (S.D.N.Y. 2014)...................................................................25

*Hoffman* v. *Parade Publ'ns*,
    15 N.Y. 3d 285 (2010) ..................................................................................23, 24

*Ikedilo* v. *Statter*,
    2020 WL 5849049 (S.D.N.Y. Sept. 30, 2020).....................................................20

*Kelly* v. *Howard I. Shapiro & Assocs. Consulting Eng'rs, P.C.*,
716 F.3d 10 (2d Cir. 2013) .......................................................................................10, 11, 13

*Kuperman* v. *City of N.Y.*,
2021 WL 4442855 (S.D.N.Y. Sept. 28, 2021) ........................................................................17

*Leibovitz* v. *N.Y.C. Transit Auth.*,
252 F.3d 179 (2d Cir. 2001) ....................................................................................................21

*Lioi* v. *N.Y.C. Dep't of Health & Mental Hygiene*,
914 F. Supp. 2d. 567 (S.D.N.Y. 2012) ....................................................................................25

*Littlejohn* v. *City of New York*,
795 F.3d 297 (2d Cir. 2015) ..............................................................................................9, 18

*McDonnell Douglas Corp.* v. *Green*,
411 U.S. 792 (1973) .................................................................................................................18

*McHenry* v. *Fox News Network*, 510 F. Supp. 3d 51 (S.D.N.Y. 2020) .........................................22

*In re Merrill Lynch Ltd. P'ships Litig.*,
154 F.3d 56 (2d Cir. 1998) ......................................................................................................25

*Mi-Kyung Cho* v. *Young Bin Café*,
42 F. Supp. 3d 495 (S.D.N.Y. 2013) .......................................................................................17

*Mitchell* v. *N.Y.C. Dep't of Educ.*,
2022 WL 621956 (S.D.N.Y. Mar. 3, 2022) ......................................................................19, 20

*Moazzaz* v. *MetLife, Inc.*,
2021 WL 827648 (S.D.N.Y. Mar. 4, 2021) .............................................................................12

*Mohan* v. *City of N.Y.*,
2018 WL 3711821 (S.D.N.Y. Aug. 3, 2018) ...........................................................................22

*Nnebe* v. *City of N.Y.*,
2023 WL 2393920 (S.D.N.Y. Jan. 30, 2023) ..........................................................................16

*Pedroza* v. *Ralph Lauren Corp.*,
2020 WL 4273988 (S.D.N.Y. July 24, 2020) ..........................................................................24

*Powell* v. *Merrick Acad. Charter Sch.*,
2018 WL 1135551 (E.D.N.Y. Feb. 27, 2018) ..........................................................................15

*Rojas* v. *Roman Cath. Diocese of Rochester*,
660 F.3d 98 (2d Cir. 2011) ......................................................................................................13

*Roman-Malone* v. *City of N.Y.*,
    2013 WL 3835117 (S.D.N.Y. July 25, 2013) ................................................................10, 25

*Small* v. *N.Y.C. Dep't of Educ.*,
    650 F. Supp. 3d 89 (S.D.N.Y. 2023)................................................................................10, 14

*Soloviev* v. *Goldstein*,
    104 F. Supp. 3d 232 (E.D.N.Y. 2015) ..................................................................................22

*Stadnick* v. *Vivint Solar, Inc.*,
    861 F.3d 31 (2d Cir. 2017)......................................................................................................9

*Sykes* v. *Rachmutch*,
    2023 WL 2752865 (S.D.N.Y. Mar. 31, 2023) ................................................................21, 22

*Trujillo* v. *City of N.Y.*,
    2016 WL 10703308 (S.D.N.Y. Mar. 29, 2016) ....................................................................15

*Vangas* v. *Montefiore Med. Ctr.*,
    823 F.3d 174 (2d Cir. 2016)...............................................................................................23, 25

*Vega* v. *Hempstead Union Free Sch. Dist.*,
    801 F.3d 72 (2d Cir. 2015)......................................................................................................9

*White* v. *Automatic Data Processing, Inc.*,
    2023 WL 3222397 (S.D.N.Y. May 3, 2022) ........................................................................17

*Williams* v. *Westchester Med. Ctr. Health Network*,
    2022 WL 4485298 (S.D.N.Y. Sept. 27, 2022).......................................................................15

*Wilson* v. *N.Y. and Presbyterian Hosp.*,
    2021 WL 9493971 (E.D.N.Y. June 22, 2021) ......................................................................13

*Wimmer* v. *Suffolk Cnty. Police Dep't*,
    176 F.3d 125 (2d Cir. 1999)..............................................................................................11, 14

**Statutes**

Civil Rights Act of 1866 Section 1981 ...................................................................... *passim*

Title VII of the Civil Rights Act of 1964....................................................................10, 13, 14

Fed. R. Civ. P. 12(b)(6)...............................................................................................................9

New York City Human Rights Law......................................................................... *passim*

New York State Human Rights Law ................................................................................8, 14, 16

iv

The National Football League, NFL Enterprises LLC, and NFL Network Services, Inc. (collectively, the "NFL Defendants") respectfully submit this memorandum of law in support of their motion to dismiss the Complaint for failure to state a claim.

## PRELIMINARY STATEMENT

This lawsuit—purporting to challenge on discrimination grounds the NFL Defendants' routine and sound business decision not to renew former NFL reporter Jim Trotter's contract at the same time it declined to renew the expiring contracts of several other reporters—has no basis in law or fact and should be dismissed at the outset.

The crux of Mr. Trotter's baseless Complaint is that his non-renewal somehow constituted unlawful retaliation because he had recently challenged the NFL Commissioner and others on what he calls "the NFL's record of race discrimination and lack of diversity." But that claim cannot be squared with Mr. Trotter's own admission that he was encouraged by the NFL Defendants to report on race and diversity issues when he was hired in 2018, and that he consistently did so throughout his NFL tenure, including before the renewal of his initial contract in March 2020. It also cannot be squared with the NFL Defendants' deep commitment to diversity and inclusion, and the racial, ethnic, and gender diversity of the NFL newsroom. Mr. Trotter's discrimination claim, which hinges on a hodge-podge of irrelevant allegations about the owners of several of the NFL's member clubs, none of which employed him, is similarly deficient. He does not plausibly allege that their purported conduct impacted his work environment, let alone rose to the level required to maintain a claim for unlawful discrimination based on race. For those and other reasons, Mr. Trotter's claims against the NFL Defendants should be dismissed.

*First*, Mr. Trotter fails to plead a retaliation claim under the applicable federal, state, or city statutes. To do so, he must allege that he engaged in "protected activity" and that he suffered an adverse employment action that was causally connected to that activity. Moreover, where, as

here, the alleged protected activity involved complaints about purported discrimination, the plaintiff must allege that his complaints put his employer on notice of his genuine belief that it had engaged in an "unlawful employment practice."  Mr. Trotter's allegations fall far short of that standard.  His bald claim that he challenged supposed "systemic race discrimination" in the NFL is not supported by factual allegations, and in any event is too generic to have put his employer on notice that he believed it had engaged in any particular unlawful employment practice.  And Mr. Trotter's claim that he challenged what he perceived to be a lack of senior Black employees in the NFL newsroom is also insufficient because he never complained that an unlawful employment practice was the reason for that perceived lack of diversity.  Even if Mr. Trotter's alleged actions were protected activity, he still could not plead a retaliation claim because he does not plausibly allege that his non-renewal was causally connected to that activity.  His allegation that the non-renewal must have been retaliatory simply because it occurred a few weeks after the final time he questioned the NFL Commissioner on diversity is insufficient, on its own, to raise a plausible inference of causation, and it ignores *his own* allegations that he challenged the Commissioner and others on the exact same diversity issues for years while he remained employed.

*Second*, Mr. Trotter fails to plead a discrimination claim under the applicable federal, state, or city statutes.  The Complaint does not allege, as it must, that any NFL Defendant acted with discriminatory intent towards Mr. Trotter, or treated him differently, on the basis of his race.  Although he makes the conclusory allegation that he was treated more harshly than "other writers" because of his vocal beliefs about what he viewed as the NFL's lack of diversity, he fails to allege that those "other writers" were outside of his protected class, or how they were treated more fairly than he was.  And to the extent that Mr. Trotter's passing references to a hostile work environment

theory are intended to assert such a claim, he cannot do so as a matter of law, because the Complaint is devoid of sufficient allegations that he was subject to anything of the sort.

*Third*, Mr. Trotter's state and city claims must be dismissed for the independent reason that he fails to plead the requisite impact of the alleged retaliation and discrimination in New York.  As a California resident who worked in California, Mr. Trotter only alleges that NFL operations are headquartered in New York City, and, in conclusory fashion, that decisions related to his contract renewal were made there; but those allegations are insufficient to show, as he must, that the alleged retaliation or discrimination impacted him in New York.  And his allegation that he traveled to New York on work trips fails to satisfy the requisite impact test because he does not allege that *he* experienced retaliation or discrimination during those trips.

For these reasons, set forth in more detail below, Mr. Trotter's Complaint should be dismissed in its entirety, with prejudice.

## BACKGROUND

### A.   The NFL Defendants

The NFL, the world's premier professional football league, is an unincorporated membership association consisting of 32 member clubs.  Compl. ¶ 19; *Am. Needle, Inc.* v. *NFL*, 560 U.S. 183, 187 (2010).  Mr. Trotter was employed by NFL Network Services, Inc. and NFL Enterprises LLC, entities that employ or employed individuals who create, produce, and promote NFL-related content and programming for the NFL's media platforms, including, but not limited to, the NFL Network, NFL.com, and NFL NOW.  *Id.* ¶¶ 19, 21–22.

Racial diversity long has been, and remains, the focus of numerous NFL initiatives to promote diversity, equity, and inclusion at the NFL and its member clubs, and to ensure equal opportunities in its hiring practices.  Among other initiatives recognized in Mr. Trotter's Complaint, nearly two decades ago the NFL implemented the "Rooney Rule," requiring teams to

interview minority candidates for any vacant head-coaching position, a policy the NFL has continually expanded and strengthened over time. *Id.* ¶¶ 59, 59 n.16, 64.  More recently, the NFL created a Coach and Front Office Accelerator Program to promote diversity in club leadership positions by providing additional opportunities for minority head coach and general manager candidates to meet Club owners. *Id.* ¶ 53.  NFL Commissioner Roger Goodell has stated publicly that the NFL's commitment to promoting diversity extends beyond the League and its clubs; the NFL "want[s] to make progress across the board, and that includes in the media room." *Id.* ¶ 188. To that end, in 2022 the NFL created a Diversity Advisory Committee to provide diversity expertise in reviewing all of the NFL's diversity policies and hiring processes, with a primary focus on diversity in hiring for senior-level coach and front office personnel positions across the organization. *Id.* ¶ 52, 52 n.11.

Mr. Trotter's Complaint and the sources on which it relies acknowledge the NFL's numerous initiatives to promote diversity outside of the League and its member clubs as well.  In 2019, for example, the NFL launched its "Inspire Change" initiative to support player-led efforts to support programs that reduce barriers to opportunity. *Id.* ¶ 116 n.26.  The NFL has committed hundreds of millions of dollars to organizations promoting social justice, and pledged its support to the Players Coalition, a player-led group that focuses on legislative and other measures to fight systemic racism. *Id.* ¶ 59 n.16.  In 2020, the NFL, along with its players and owners, announced a commitment to donate $250 million over 10 years to champion social justice initiatives that address criminal justice reform, police reform, and economic and educational advancement for African Americans. *Id.* ¶ 47 n.9.  The NFL has awarded more than $300 million in grants to social justice organizations, including 40 national grant partners and 650 local non-profits. *Id.*[1]

---

[1] https://operations.nfl.com/inside-football-ops/social-justice/inspire-change/.

B.    **Plaintiff**

Mr. Trotter, a California resident, was employed in Los Angeles by NFL Network Services, Inc. from March 2018 to March 2020, and by NFL Enterprises LLC from March 2020 to March 2023.  Compl. ¶ 18.  His initial contract had a two-year term and contemplated that he would provide written and television media content to the NFL.  *Id.* ¶ 94.  In March 2020, at the conclusion of Mr. Trotter's initial contract, the NFL renewed his contract for another three years, through March 31, 2023.  *Id.* ¶ 95.  On March 24, 2023, amid an overall media talent restructuring, the NFL informed Mr. Trotter's agent that his contract would not be renewed.  *Id.* ¶ 211.

C.    **The Complaint**

Mr. Trotter was approached about a reporting job at the NFL while working at ESPN, where he frequently reported on the intersection between football and race.  *Id.* ¶ 92.  Mr. Trotter made clear that he would only consider moving to the NFL if he could "focus reporting on player activism . . . and social issues impacting the NFL and its players, including issues involving racial injustice."  *Id.* ¶ 93.  He further alleges that he was "given assurances" that he and the NFL were "aligned in this approach."  *Id.* ¶ 94.

Mr. Trotter alleges that the NFL encouraged him to report on racial justice issues throughout his employment.  He identifies "numerous examples" of his "outspokenness" on those issues starting early in his tenure, including a TV appearance on NFL NOW during which he raised the "lack of Black representation among NFL head coaches" and "stated that the NFL newsroom similarly lacked Black leadership."  *Id.* ¶ 107.

Nevertheless, Mr. Trotter alleges that the NFL Defendants retaliated against him by not renewing his contract after he purportedly "raise[d] concerns publicly and privately regarding discrimination within the NFL and in the NFL Media Newsroom."  *Id.* ¶¶ 212.  Notably, he does not allege that he ever complained to the NFL that what he perceived to be a lack of racial diversity

in the newsroom was the result of unlawful discrimination.  Rather, he alleges that he generally "raised his concerns on numerous occasions about the NFL's record on racial diversity" on-air and through his writing, and to his managers and other unidentified senior NFL employees.  *Id.* ¶¶ 7, 99–101, 103, 107, 146, 154, 174.  Although he concedes that he spoke about these matters "both in his reporting and in his internal communications with the NFL," including in "numerous articles and TV appearances" during his employment, *id.* ¶ 103, Mr. Trotter alleges—contrary to publicly available facts and his own allegations otherwise—that the NFL stifled his attempts to do so.  Specifically, he alleges that he was discouraged from reporting on an alleged discriminatory comment by Dallas Cowboys owner Jerry Jones, *see id.* ¶¶ 121–122, his criticism of the NFL Coach and Front Office Accelerator Program[2] as a "public relations stunt," and the NFL's handling of an on-field health incident involving Buffalo Bills player Damar Hamlin, *see id.* ¶¶ 141–152, 158–166.

The crux of Mr. Trotter's Complaint is that his employment contract was not renewed in March 2023, six weeks after he questioned the NFL Commissioner on racial diversity issues at the February 2023 Super Bowl press conference.  Compl. ¶¶ 210–224.  Mr. Trotter alleges that he "publicly challenged" the Commissioner about the League's record on diversity, and that because of such questioning, his contract was not renewed.  *Id.* ¶¶ 2, 178–213.  Mr. Trotter concedes, however, that he posed a substantially similar question regarding diversity to the Commissioner at the February 2022 Super Bowl press conference, one year earlier.  *Id.* ¶¶ 135–139.  NFL personnel chose to call on Mr. Trotter at both press conferences with the expectation that he would publicly

---

[2]    While Mr. Trotter now alleges that the Accelerator Program "is illustrative of the NFL's failure to accept and address the significance of its problems with respect to racial diversity," he has stated publicly that he "get[s] why the League" implemented the Accelerator Program and is "not being critical of the League" when he criticizes that program.  *Compare* Compl. ¶ 53, *with id.* ¶ 53 n.12 (*Unpacking 'discouraging' NFL accelerator program*, YAHOO SPORTS (May 18, 2023), https://sports.yahoo.com/unpacking-discouraging-nfl-accelerator-program-201502705.html), at 3:40.

question the Commissioner about the League's diversity efforts, and the Commissioner responded to Mr. Trotter's questions in both instances. *Id.* ¶¶ 136, 185–188.

Mr. Trotter does not allege that his contract was not renewed because he is Black, nor does he allege that any NFL Defendant directed racially discriminatory animus towards him at any time during his employment, let alone in connection with the decision not to renew his contract. Rather, he alleges that his non-renewal somehow was a retaliatory response to his race-related reporting because Sandra Nunez, the NFL's VP of On-Air Talent Management, allegedly told Mr. Trotter's agent in November 2022 that she "could not envision any reason why his contract would not be renewed," Compl. ¶¶ 2, 178–179, but in February 2023, after Mr. Trotter's exchange with the Commissioner at the Super Bowl press conference, Ms. Nunez allegedly told Mr. Trotter that his contract was "still being discussed," *id.* ¶¶ 206–207, and a few weeks later allegedly informed Mr. Trotter's agent that it would not be renewed, *id.* ¶¶ 2, 211. Mr. Trotter also alleges that after the February 2023 Super Bowl press conference, his manager, Ali Bhanpuri, asked a colleague why Mr. Trotter "keep[s] bringing this up?" *Id.* ¶ 2, 191. Mr. Trotter does not allege that the Commissioner, Ms. Nunez, or Mr. Bhanpuri were decision-makers with respect to the non-renewal of his contract.

Finally, Mr. Trotter claims that throughout his employment, he "witnessed and observed discriminatory and/or hostile conduct" by his employers that he claims "went entirely unchecked as a matter of standard operating procedure." *Id.* ¶ 4. Tellingly, he does not plead any factual allegations describing any particular discriminatory or hostile conduct by the NFL. Mr. Trotter alleges only that two NFL member club owners, Buffalo Bills owner Terry Pegula and Dallas Cowboys owner Jerry Jones, each made a racially insensitive comment while Mr. Trotter was reporting for the NFL. *Id.* ¶¶ 4–6, 110–124, 125–133. Neither comment is alleged to have been

about Mr. Trotter or his race; Mr. Pegula's comment was not even alleged to have been made to Mr. Trotter or in his presence. *Id.* ¶¶ 124–128. Mr. Trotter also alleges that in June 2022, he raised the lack of Black employees in the NFL newsroom to then-NFL Network executive Mark Quenzel, who responded by saying "I walk through the newsroom every day. I see them." *Id.* ¶ 154. Mr. Trotter alleges that he "was offended by Mr. Quenzel's use of the term 'them' to vaguely assert that there were Black employees in key positions in the newsroom." *Id.* ¶ 155.

On the basis of these allegations, Mr. Trotter purports to assert claims for race discrimination and retaliation in violation of Section 1981 of the Civil Rights Act of 1866 ("§ 1981"), the New York State Human Rights Law ("NYSHRL"), and the New York City Human Rights Law ("NYCHRL"), and seeks damages and sweeping equitable relief that extends well beyond his own claims to seek proverbial headlines, including "the imposition of a court-ordered monitor" and a "full-scale investigation into the discriminatory and/or retaliatory animus of all persons in [a] position of power within the NFL, including the NFL team owners." *Id.* ¶ 12.

Notably, Mr. Trotter does not assert discrimination or retaliation claims premised on the Complaint's numerous, inflammatory and conclusory references to what he calls "systemic race discrimination" within the NFL, its media group, and its members.[3] *Compare* Compl. ¶¶ 23–67, *with id.* ¶¶ 214–239. Those allegations serve only to support Mr. Trotter's unfounded notion that his non-renewal is part of a supposed broader "history" of "lack of racial inclusion" at the NFL and its member clubs. *Id.* ¶ 8.

---

[3]     The Complaint borrows heavily in this respect from the allegations in the putative class action complaint filed by Coach Brian Flores against the NFL and certain of its member clubs. *See Flores* v. *NFL*, No. 1:22-cv-00871-VEC (S.D.N.Y.), ECF No. 22. Mr. Trotter's Complaint quotes nearly verbatim from Coach Flores's allegations, including but not limited to those regarding the purported dearth of Black professionals across the NFL, Compl. ¶ 8; the NFL's failure to address an alleged lack of racial integration, *id.* ¶¶ 23–28; alleged race-norming in the court-approved NFL concussion settlement, *id.* ¶¶ 42–45; and the NFL's response to George Floyd's murder, *id.* ¶¶ 46–48. The Complaint does not connect these allegations in any way to the race discrimination or retaliation claims asserted by Mr. Trotter.

# ARGUMENT

To survive a Rule 12(b)(6) motion to dismiss, a complaint must contain sufficient factual allegations that, if accepted as true, "state a claim to relief that is plausible on its face." *Bell Atl. Corp.* v. *Twombly*, 550 U.S. 544, 547 (2007). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft* v. *Iqbal*, 556 U.S. 662, 678 (2009). The Court must "accept[] all factual allegations as true, but giv[e] no effect to legal conclusions couched as factual allegations." *Stadnick* v. *Vivint Solar, Inc.*, 861 F.3d 31, 35 (2d Cir. 2017) (citations and quotations omitted). In a discrimination case, only well-pleaded factual allegations can nudge the plaintiff's claim "across the line from conceivable to plausible" by "giv[ing] rise to an inference of unlawful discrimination." *Vega* v. *Hempstead Union Free Sch. Dist.*, 801 F.3d 72, 87 (2d Cir. 2015).

For the reasons set forth below, Mr. Trotter's Complaint does not even remotely satisfy these standards and should be dismissed.

## I.    Mr. Trotter's Retaliation Claims Should Be Dismissed

The Complaint contains no well-pleaded factual allegations to support Mr. Trotter's claims that his non-renewal constituted unlawful retaliation under federal, state, or local laws.

### A.    Mr. Trotter Fails to State a Retaliation Claim Under § 1981

"To establish a presumption of retaliation . . . a plaintiff must present evidence that shows (1) participation in a protected activity; (2) that the defendant knew of the protected activity; (3) an adverse employment action; and (4) a causal connection between the protected activity and the adverse employment action." *Littlejohn* v. *City of N.Y.*, 795 F.3d 297, 315–16 (2d Cir. 2015) (citations and quotations omitted) (noting that "[r]etaliation claims under Title VII and § 1981 are both analyzed pursuant to Title VII principles"); *Roman-Malone* v. *City of N.Y.*, 2013 WL

3835117, at *7 (S.D.N.Y. July 25, 2013) (same).  Mr. Trotter's allegations fail to satisfy the first and fourth elements of his federal retaliation claim.

1.   <u>Mr. Trotter Does Not Allege That He Engaged in Protected Activity</u>

Mr. Trotter cannot state a claim for retaliation as a matter of law because he does not, and cannot, allege that he engaged in protected activity.  "'Protected activity' refers to action taken in opposition to statutorily prohibited discrimination."  *Roman-Malone*, 2013 WL 3835117, at *7. To have engaged in protected activity, a plaintiff must "have had a good faith, reasonable belief that he was opposing an employment practice made unlawful by Title VII."  *Small* v. *N.Y.C. Dep't of Educ.*, 650 F. Supp. 3d 89, 102 (S.D.N.Y. 2023).  "[P]laintiff's belief . . . is not reasonable simply because he or she complain[ed] of something that appears to be discrimination in some form."  *Id.* at 102 (quoting *Kelly* v. *Howard I. Shapiro & Assocs. Consulting Eng'rs, P.C.*, 716 F.3d 10, 15 (2d Cir. 2013)).  The Second Circuit has held, for example, that a hospital administrator who alleged he was terminated after complaining that a white employee had been "chosen over qualified black and other minority applicants" failed to plausibly allege retaliation because his "'objections at the time neither pointed out discrimination against particular individuals nor discriminatory practices by [the employer]' and were thus 'directed at something that, as it was alleged, is not properly within the definition of an "unlawful employment practice."'"  *Kelly*, 716 F.3d at 15 (quoting *Manoharan* v. *Columbia Univ. Coll. of Physicians & Surgeons*, 842 F.2d 590, 593–94 (2d Cir. 1988)).  Similarly, the Second Circuit has found that a Black police officer who "reported overhearing racial slurs made by [other] police officers against black citizens" had not engaged in protected activity despite "opposing discrimination by co-employees against non-employees" because his "opposition was not directed at an unlawful *employment practice* of his employer."  *Wimmer* v. *Suffolk Cnty. Police Dep't*, 176 F.3d 125, 134–35 (2d Cir. 1999) (emphasis in original).

Mr. Trotter alleges that he engaged in two types of protected activity, but neither was directed at conduct that was even arguably an "unlawful employment practice." *First*, Mr. Trotter alleges that he "challeng[ed]" what he viewed as the "lack of diversity" in the NFL league office, NFL media group, and NFL clubs' front offices. Compl. ¶ 1. The most specific such allegations involve Mr. Trotter's questions to Commissioner Goodell at the 2022 and 2023 Super Bowl press conferences. Compl. ¶¶ 135–136, 186–187. At the 2022 press conference, Mr. Trotter noted that "of the top 11 executives [at the league office], there are only two people of color" and asked the Commissioner "why . . . the NFL and its owners have such a difficult time at the highest levels hiring Black people into decision making positions?" *Id.* ¶ 136. Similarly, at the 2023 press conference, Mr. Trotter challenged what he viewed as the general lack of diversity in the NFL newsroom before asking, "when are we in the newsroom going to have a Black person in senior management, and when will we have a full-time Black employee on the news desk?" *Id.* ¶ 187.

While diversity among NFL staff is an important topic, Mr. Trotter's questions to the Commissioner were not protected activity because he was not "complaining of conduct prohibited by [anti-discrimination statutes] or that [his] employers could have understood [his] complaints in this way." *Kelly*, 716 F.3d at 16. At most, Mr. Trotter was "advocat[ing] for the hiring of [more] minority candidates," which does not rise to the level of "opposing an unlawful employment practice." *Byerly* v. *Ithaca Coll.*, 290 F. Supp. 2d 301, 309 n.13 (N.D.N.Y. 2003), *aff'd*, 113 F. App'x 418 (2d Cir. 2004) ("Merely alleging that white . . . candidates were chosen . . . is not proof of a discriminatory selection process."); *see Branch* v. *Sony Music Ent. Inc.*, 2001 WL 228108, at *6 (S.D.N.Y. Mar. 8, 2001), *aff'd*, 34 F. App'x 23 (2d Cir. 2002) ("A racial imbalance in the makeup of a workplace is insufficient, by itself, to demonstrate discrimination.").

*Moazzaz* v. *MetLife, Inc.*, 2021 WL 827648 (S.D.N.Y. Mar. 4, 2021), is instructive on this point.  There, the plaintiff alleged that MetLife did not promote her because she engaged in a "broad array" of alleged protected activity, including creating a "candidate strategy" document that "exposed many gaps in diversity at MetLife" and making "several comments . . . about MetLife's lack of a 'recruiting strategy aimed at increasing diversity.'"  *Id.* at *13.  The district court found that none of this alleged conduct constituted protected activity "[b]ecause 'lack of diversity alone is not actionable,' and anti-discrimination laws do not require employers to maintain diversity programs[.]"  *Id.* (quoting *Fenner* v. *News Corp.*, 2013 WL 6244156, at *25 (S.D.N.Y. Dec. 2, 2013)).  Mr. Trotter's questions to the Commissioner about what he viewed as the NFL league office's "lack of diversity," Compl. ¶ 2, and the "dearth of Black managers in the NFL Newsroom," *id.* ¶ 96, were not protected activity for the same reasons.[4]

Mr. Trotter also alleges that he raised concerns about what he calls "systemic discrimination" at the NFL, including by "prob[ing] his employer's record on race discrimination," complaining that "the NFL itself and the NFL newsroom . . . lack sufficient Black representation," and vocalizing his view that the lack of diversity in the NFL newsroom is "part of the well-documented pattern of systemic and institutional race discrimination within the NFL."  Compl. ¶¶ 67, 102, 153–157, 186.  He acknowledges that this reporting was expected from him and does not allege that he complained that he, or any other NFL applicant or employee, was subject to discrimination on the basis of race.

---

[4]      For the same reasons, these alleged protected activities are not at all comparable to the two plaintiff complaints that the *Moazzaz* court decided "squeak[ed] by" into the category of protected activity—a direct complaint to MetLife Human Resources about a specific male employee "attempting to lay off African American MetLife employees," and an email from the plaintiff "complaining that it was 'incredibly unfair' that she had not yet been promoted" and threatening that "MetLife would be asking for a lawsuit" if she were not promoted.  *Id.* at *13.  As discussed *infra*, Mr. Trotter does not allege that he complained about any unfair treatment or adverse employment action directed at him because of his membership in a protected class.

It is well established that general or ambiguous references to "race discrimination" are not sufficient to support a retaliation claim. *See Bamba* v. *Fenton*, 758 F. App'x 8, 12–13 (2d Cir. Dec. 4, 2018) (affirming dismissal of retaliation claim because defendant "could not have reasonably known that [plaintiff's] . . . complaint alleged racial discrimination under Title VII as to constitute a protected activity" based on plaintiff's "conclusory allegations" that she was "discriminated [against] and defamed"); *Kelly*, 716 F.3d at 17 ("Although particular words such as 'discrimination' are certainly not required to put an employer on notice of a protected complaint, neither are they sufficient to do so if nothing in the substance of the complaint suggests that the complained-of activity is, in fact, unlawfully discriminatory."); *Wilson* v. *N.Y. and Presbyterian Hosp.*, 2021 WL 9493971, at *12 (E.D.N.Y. June 22, 2021) ("A plaintiff's belief on this point is not reasonable simply because he complains about 'discrimination in some form' or 'general allegations of mistreatment,' but must be 'directed at something that, as it was alleged, is . . . properly within the definition of an unlawful employment practice.'") (quoting *Manoharan*, 842 F.2d at 593–94); *see also Rojas* v. *Roman Cath. Diocese of Rochester*, 660 F.3d 98, 108 (2d Cir. 2011) (holding that "generalized," non-specific grievances do not constitute protected activity). Indeed, "[a] standard for protected activity that swept in any conversation about race and inclusion might have the perverse effect of discouraging employers from encouraging such conversations." *Cardwell* v. *Davis Polk & Wardwell LLP*, 2021 WL 4434935, at *31 (S.D.N.Y. Sept. 23, 2021).

*Second*, Mr. Trotter alleges that he complained about alleged comments made by the owners of two NFL member clubs, Terry Pegula and Jerry Jones, Compl. ¶¶ 112–116, 125–133, but those alleged complaints cannot constitute protected activity as a matter of law. To rise to the level of protected activity, the alleged "opposition must be directed at an unlawful employment practice of an employer, not an act of discrimination by a private individual." *Small*, 650 F. Supp.

3d at 103.  Mr. Trotter does not allege that Mr. Pegula or Mr. Jones were his employers, or that they engaged in any "unlawful employment practice[s]."  *See Wimmer*, 176 F.3d at 134–35 (dismissing retaliation claim for failure to allege participation in protected activity where black police officer "reported overhearing racial slurs made by [other] police officers against black citizens" because his "opposition was not directed at an unlawful *employment practice* of his employer").  As Mr. Trotter acknowledges, he did not even hear the comment allegedly made by Mr. Pegula.  In any case, it is well settled that "stray" comments are "not, standing alone, an unlawful employment practice under Title VII, the NYSHRL, or the NYCHRL."  *Green* v. *Mount Sinai Health Sys., Inc.*, 2019 WL 4392691, at *5 n.8 (S.D.N.Y. Sept. 12, 2019), *aff'd*, 826 F. App'x 124 (2d Cir. 2020).

2.   <u>Mr. Trotter Does Not Allege the Requisite Causal Connection Between His Alleged Protected Activity and His Non-Renewal</u>

Even if Mr. Trotter could plausibly allege that he engaged in protected activity—and he cannot—he still would fail to state a claim for retaliation under § 1981 because he does not "allege that the retaliation was a 'but-for' cause of the employer's adverse action."  *Briggs* v. *SCO Fam. of Servs.*, 2023 WL 3589896, at *2 (2d Cir. May 23, 2023).  Indeed, Mr. Trotter's allegations do not raise a plausible inference of *any* causal connection, let alone but-for causation, between the purported protected activity and his non-renewal.

A complaint may "establish a causal connection to support [the] retaliation claim 'either: (1) indirectly, by showing that the protected activity was followed closely by discriminatory treatment, or through other circumstantial evidence such as disparate treatment of fellow employees who engaged in similar conduct; or (2) directly, through evidence of retaliatory animus directed against the plaintiff by the defendant."  *Colon* v. *N.Y.C. Hous. Auth.*, 2021 WL 2159758, at *13 (S.D.N.Y. May 26, 2021).  Mr. Trotter does not allege any direct evidence of retaliatory

14

animus directed towards him by any of the NFL Defendants, nor indirect evidence that he was treated differently from similarly situated reporters outside of his protected class.  Instead, he relies entirely on allegations of temporal proximity.

"[T]he interval between a protected activity and an adverse action that results in a finding of retaliation is generally no more than several months."  *Trujillo* v. *City of N.Y.*, 2016 WL 10703308, at *17 (S.D.N.Y. Mar. 29, 2016); *see also Williams* v. *Westchester Med. Ctr. Health Network*, 2022 WL 4485298, at *18 (S.D.N.Y. Sept. 27, 2022) ("[T]he Second Circuit has discounted an inference of causation after three months . . . and has similarly affirmed multiple cases emanating from the district holding similarly.").  The vast majority of Mr. Trotter's alleged protected activities cannot raise a plausible inference of retaliatory intent based on temporal proximity because almost all of them occurred more than nine months before his non-renewal, and most occurred more than one year earlier.  *See, e.g.*, Compl. ¶ 107 ("early on in his tenure"), ¶ 128 (September 3, 2020), ¶ 122 (October 12, 2021), ¶ 136 (February 9, 2022), ¶¶ 148–151 (June 7, 2022), ¶ 156 (June 2022).  The only alleged protected activity that occurred within nine months of his non-renewal is his question to Commissioner Goodell at the February 2023 Super Bowl press conference six weeks earlier.  *Id.* ¶ 187.  But any retaliatory inference that might be drawn from that temporal proximity is not plausible in light of Mr. Trotter's own allegation that he posed the exact same questions to the Commissioner—who he does not allege played any role in his non-renewal—in February 2022, and remained employed by NFL Enterprises LLC for more than a year thereafter.  *Id.* ¶ 137; *see Powell* v. *Merrick Acad. Charter Sch.*, 2018 WL 1135551, at *6–7 (E.D.N.Y. Feb. 27, 2018) (dismissing retaliation claim where allegations of temporal proximity may have been sufficient to raise an inference of retaliation "[i]n a vacuum," but complaint

contained other allegations "that actually undermine the inference that [the adverse action was taken] for discriminatory reasons").

Indeed, Mr. Trotter concedes that he raised concerns about what he perceived to be "race discrimination" at the NFL *consistently* throughout his tenure at the NFL, which further undermines any inference that the March 2023 decision not to renew his contract was retaliatory. For example, he alleges that at the very beginning of his tenure at the NFL, he did a TV appearance on NFL NOW during which he discussed what he viewed as "the lack of Black representation among NFL head coaches" and stated that "the NFL newsroom similarly lacked Black leadership." Compl. ¶ 107. He also alleges that there were "numerous other examples" of his "outspokenness on issues of discrimination" in the newsroom "during his early years at the NFL." *Id.* ¶ 108. These allegations not only demonstrate the NFL's continuous support of Mr. Trotter's reporting, but they render the inference that his non-renewal was retaliatory implausible—particularly given that the NFL chose to *renew* Mr. Trotter in 2020, when his initial contract expired and long after he began expressing his views on diversity issues. *Id.* ¶ 95.

**B.    Mr. Trotter Fails to State a Retaliation Claim Under the NYSHRL or the NYCHRL**

Mr. Trotter's NYSHRL and NYCHRL retaliation claims are based on the same factual allegations as his § 1981 retaliation claim. *Compare* Compl. ¶¶ 222–225, *with id.* ¶¶ 226–229, 230–234. As a result, they suffer from the same fatal pleading failures and must be dismissed.

For purposes of this motion, the relevant elements of a prima facie retaliation claim under the NYSHRL and NYCHRL are "'identical' to their federal counterpart." *Nnebe* v. *City of N.Y.*, 2023 WL 2393920, at *14–15 (S.D.N.Y. Jan. 30, 2023) (quoting *Smith* v. *City of N.Y.*, 385 F. Supp. 3d 323, 346 (S.D.N.Y. 2019)). Both the NYSHRL and NYCHRL define protected activity as "conduct that 'oppos[es] or complain[s] about unlawful discrimination.'" *Mi-Kyung Cho* v.

*Young Bin Café*, 42 F. Supp. 3d 495, 507 (S.D.N.Y. 2013) (quoting *Forrest* v. *Jewish Guild for the Blind*, 3 N.Y.3d 295, 312–13 (2004)).  Under either statute, a plaintiff must "plausibly allege that he engaged in activity protected by the relevant civil rights statute, and that there was a 'causal connection' between that activity and resulting adverse action."  *Kuperman* v. *City of N.Y.*, 2021 WL 4442855, at *7 (S.D.N.Y. Sept. 28, 2021).  Thus, for the same reasons that Mr. Trotter cannot plausibly allege that he engaged in legally cognizable protected activity under § 1981, discussed in § I.A.1., *supra*, he also cannot plausibly allege that he engaged in protected activity under the NYSHRL or the NYCHRL.

Section 1981's higher but-for causation standard does not apply to the NYCHRL, under which a plaintiff "need only allege that retaliatory animus played some role in the employer's decision."  *Cardwell* v. *Davis Polk & Wardwell LLP*, 2020 WL 6274826, at *37 (S.D.N.Y. Oct. 24, 2020).  But even under the NYCHRL, "a plaintiff [still] must . . . establish that there was a causal connection between her protected activity and the employer's subsequent action."  *Colon*, 2021 WL 2159758, at *13.  And where, as here, plaintiff alleges only indirect evidence of temporal proximity, "[t]he same temporal analysis of causation is applicable to federal, NYSHRL, and NYCHRL retaliation claims."  *Atkinson* v. *Singh*, 2022 WL 137634, at *13 (S.D.N.Y. Jan. 14 2022); *see White* v. *Automatic Data Processing, Inc.*, 2023 WL 3222397, at *4–5 (S.D.N.Y. May 3, 2022) (finding complaint failed to allege causation in support of § 1981, NYSHRL, and NYCHRL retaliation claims based on a single temporal proximity analysis).  Thus, for the same reasons that Mr. Trotter fails to allege a sufficient temporal nexus between his supposed complaints of race discrimination within the NFL and the decision not to renew his contract, discussed in § 1.A.2., *supra*, he also fails to plead the causation element of his NYSHRL and NYCHRL retaliation claims.

## II.     Mr. Trotter's Discrimination Claims Should Be Dismissed

Recognizing that his retaliation claims fail as a matter of law, Mr. Trotter also purports to assert claims for race discrimination against the NFL Defendants under § 1981, the NYSHRL, and the NYCHRL.  *See* Compl. ¶¶ 214–225.  Those claims, too, are premised on threadbare allegations and should not proceed.

The Complaint merely asserts that "Defendants have discriminated against Plaintiff on the basis of race" by "subjecting him to disparate treatment, a hostile work environment and terminating his employment and/or refusing to extend his contract," *id.* ¶ 215, but that vague and conclusory pleading is woefully insufficient to plausibly allege that any of the NFL Defendants discriminated against Mr. Trotter on the basis of his race.  *See Littlejohn*, 795 F.3d at 311 (to survive a motion to dismiss, a complaint must allege facts that "give plausible support to a minimal inference of discriminatory motivation"); *Gaddy* v. *Waterfront Comm'n*, 2014 WL 4739890, at *5 (S.D.N.Y. Sept. 19, 2014) ("Naked assertions of race discrimination, without any supporting facts, are insufficient to state a Section 1981 claim.").  For the reasons that follow, and regardless of theory, the Complaint is wholly devoid of any well-pleaded factual allegations that could support a federal, state, or local race discrimination claim.

### A.     Mr. Trotter Fails to State a Race Discrimination Claim Under § 1981

Claims for race discrimination brought under § 1981 are analyzed under the standard promulgated in *McDonnell Douglas Corp.* v. *Green*, 411 U.S. 792 (1973).  *See Fernandez* v. *City of N.Y.*, 2012 WL 2402642, at *3 (S.D.N.Y. June 26, 2012).  A plaintiff bears the initial burden of establishing a prima facie case of discrimination by demonstrating (1) membership in a protected class, (2) qualification for the position, (3) an adverse employment action, and (4) that the adverse employment action occurred under circumstances giving rise to an inference of discriminatory

intent.  *See Mitchell* v. *N.Y.C. Dep't of Educ.*, 2022 WL 621956, at *5 (S.D.N.Y. Mar. 3, 2022)

(quoting *Sassaman* v. *Gamache*, 566 F.3d 307, 312 (2d Cir. 2009)).

1.   <u>Mr. Trotter Does Not Plead Discriminatory Intent</u>

Mr. Trotter does not, and cannot, plead that his contract non-renewal constituted

discrimination on the basis of his race.  *See Acosta* v. *City of N.Y.*, 2012 WL 1506954, at *4

(S.D.N.Y. Apr. 26, 2012) ("the *sine qua non* of a race-based discrimination . . . claim is that

discrimination was . . . *because of race*"); *Comcast Corp.* v. *Nat'l Assoc. of Afr. Am.-Owned Media*,

140 S. Ct. 1009, 1019 (2020) (the plaintiff bears the burden throughout a § 1981 lawsuit, including

at the pleading stage, to show that "but for race, [they] would not have suffered the loss of a legally

protected right"); *Gatling* v. *West*, 850 F. App'x 91, 96–97 (2d Cir. 2021) (observing same).

Although Mr. Trotter alleges an adverse employment action—that his contract was not

renewed—he fails to allege facts that raise a plausible inference that the action would not have

been taken but for his race.  He does not allege, for example, that he was treated differently because

he is Black, or that the NFL Defendants replaced him with, or instead retained a similarly situated

white reporter.[5]  Instead, he repeatedly makes the conclusory allegation that the non-renewal of

his contract was an "act of retaliation" for stating his views about racial diversity in the NFL and

its media group.  Compl. ¶¶ 211–212; *see id.* ¶¶ 175–177 (alleging that the NFL "express[ed]

---

[5]     Indeed, Mr. Trotter's only allegation of "being treated disparately" is the conclusory allegation that he was "treated unfairly and more harshly than other writers *because he had expressed his belief that the NFL engages in discriminatory conduct.*"  Compl. ¶ 151 (emphasis added).  Even assuming the truth of that allegation, and assuming that Mr. Trotter had alleged how those writers were treated less harshly (he has not), that allegation still could not provide a basis for a disparate treatment claim because Mr. Trotter does not allege that the "other writers" were outside his protected class.  *See Gatling*, 850 F. App'x at 97 (dismissing § 1981 race discrimination claim where plaintiff failed to show unequal treatment by state trooper as compared to similarly situated white motorists); *Acosta*, 2012 WL 1506954, at *5 (dismissing § 1981 race discrimination claim where plaintiff failed to show that he was treated differently "on account of his race"); *see also Daniels* v. *City of N.Y.*, 2019 WL 251511 at *4 (S.D.N.Y. Jan. 17, 2019) (holding that complaint failed to raise inference of discrimination where it lacked "any specificity as to the alleged comparators' qualifications, responsibilities, employment history and conduct").

annoyance and frustration"  and "direct[ed] Mr. Trotter to stop raising this issue"[6]).  Even if those assertions were supported by well-pleaded factual allegations, and they are not, they could not raise a plausible inference of discriminatory intent because Mr. Trotter does not allege any facts connecting the alleged motivation for his non-renewal to the fact that he is Black.  That alone is fatal to his discrimination claim.  *See Mitchell*, 2022 WL 621956, at *6 (dismissing § 1981 complaint that "merely describe[d] adverse employment actions . . . without linking those adverse employment actions in any way to [the plaintiff's] . . . race"); *Ikedilo* v. *Statter*, 2020 WL 5849049, at *9 (S.D.N.Y. Sept. 30, 2020) (dismissing § 1981 race discrimination claim where "Plaintiff fail[ed] to plausibly allege any connection between her race and Defendant Statter's delay in sending her evaluation summary—much less that her race was the 'but for' cause of the delay"); *Acosta*, 2012 WL 1506954, at *4 (granting motion to dismiss § 1981 discrimination claim because the "plaintiff fail[ed] to connect the dots between the alleged adverse actions and his membership in a protected class").

### 2.    Mr. Trotter Does Not Plead a Hostile Work Environment

To the extent that Mr. Trotter's conclusory references to a hostile work environment theory are intended to assert such a claim, he does not (and cannot) plead that claim as a matter of law. To adequately plead a claim for a race-based hostile work environment under § 1981, a plaintiff must allege facts that would tend to show that the complained of conduct: "(1) is objectively severe or pervasive—that is, creates an environment that a reasonable person would find hostile or

---

[6]    Although unnecessary to conclude that the allegation is insufficient to raise a plausible inference of discriminatory intent, it bears noting that Mr. Trotter's conclusory claim that the NFL "was clearly directing [him] to stop raising this issue and attempting to deter him from raising future complaints or concerns" is not supported, and is actually contradicted, by his allegation that Dasha Smith, the NFL's Chief Administrative Officer, responded to Mr. Trotter's question about NFL newsroom diversity by saying, "Yes, Jim.  You regularly make us aware of this. Hopefully you won't have to ask any more in the next year."  Compl. ¶¶ 174–177.  If anything, that allegation suggests that Ms. Smith hoped that Mr. Trotter's inquiries would not be necessary in the coming year in light of the numerous initiatives in place to continue to improve diversity in hiring across the organization.

abusive; (2) creates an environment that the plaintiff subjectively perceives as hostile or abusive; and (3) creates such an environment because of the plaintiff's race." *Sykes* v. *Rachmutch*, 2023 WL 2752865, at *7 (S.D.N.Y. Mar. 31, 2023); *see also Alfano* v. *Costello*, 294 F.3d 365, 374 (2d Cir. 2002) (hostile work environment may result from "a single incident [that] was extraordinarily severe, or . . . a series of incidents [that] were sufficiently continuous and concerted to have altered the conditions of [the plaintiff's] working environment") (citations and quotations omitted).

The scant factual allegations that even arguably bear on a hostile work environment claim show that Mr. Trotter was not subject to an environment that "a reasonable person would find hostile or abusive." Mr. Trotter claims that "[t]hroughout his employment, [he] witnessed and observed discriminatory and/or hostile conduct by his employers—including by NFL team owners—that went entirely unchecked as a matter of standard operating procedure." Compl. ¶ 4. But the only factual allegations characterized as "discriminatory and/or hostile conduct" in the Complaint are the comments allegedly made by Mr. Pegula and Mr. Jones. Compl. ¶¶ 4–6, 116, 126–127. Notably, Mr. Trotter does not allege that either Mr. Pegula or Mr. Jones employed him, and in fact he concedes that they owned NFL clubs for which he did not work. *Id.* ¶¶ 4–6. Nor does Mr. Trotter allege, as he must, that those one-off remarks by Mr. Jones and Mr. Pegula were so "permeated with 'discriminatory intimidation, ridicule, and insult'" that they were "'sufficiently severe or pervasive to alter the conditions of the victim's employment.'" *Sykes*, 2023 WL 2752865, at *7 (quoting *Harris* v. *Forklift Systems, Inc.*, 510 U.S. 17, 21 (1993)). Mr. Pegula's alleged comment is particularly deficient in this respect because, as Mr. Trotter admits, it was not made to him and was only repeated to him secondhand. Compl. ¶ 126; *see Leibovitz* v. *N.Y.C. Transit Auth.*, 252 F.3d 179, 189–90 (2d Cir. 2001) (affirming dismissal of hostile work environment based on alleged sexual harassment of coworkers where plaintiff was not the target

of the harassment, present when it occurred, or aware of it as it was ongoing).  Even if true, these alleged statements were "at most isolated and sporadic incidents, [which are] generally insufficient to establish a hostile work environment claim."  *Mohan* v. *City of N.Y.*, 2018 WL 3711821, at *15 (S.D.N.Y. Aug. 3, 2018) (dismissing hostile work environment claim); *see Sykes*, 2023 WL 2752865, at *7 ("Isolated incidents or 'episodic' stray remarks are not 'sufficiently continuous and concerted in order to be deemed pervasive.'") (quoting *Terry* v. *Ashcroft*, 336 F.3d 128, 148 (2d Cir. 2003)).[7]

## B.    Mr. Trotter Fails to State a Race Discrimination Claim Under the NYSHRL or the NYCHRL

As with his retaliation claim, the elements of a prima facie case of race discrimination are the same under § 1981 as they are under the NYSHRL and NYCHRL.  *See Baker* v. *MTA Bus Co.*, 2023 WL 4896686, at *8 (S.D.N.Y. Aug. 1, 2023) (citing *Tubo* v. *Orange Reg'l Med. Ctr.*, 690 F. App'x 736, 738 (2d Cir. 2017) (summary order)*; McHenry* v. *Fox News Network, LLC*, 510 F. Supp. 3d 51, 68 (S.D.N.Y. 2020).  Mr. Trotter's allegations fail to state a claim for race discrimination under the NYCHRL, and therefore both his state and city discrimination claims must be dismissed with prejudice.

An employer's discriminatory motive on the basis of the plaintiff's race is "a requirement to state a claim under NYCHRL."  *Soloviev* v. *Goldstein*, 104 F. Supp. 3d 232, 250 (E.D.N.Y. 2015).  As discussed in § 2.A., *supra*, Mr. Trotter does not allege that his contract renewal was motivated by discriminatory intent based on his race, nor that his "employer treated [him] less favorably than a similarly situated employee outside [his] protected group," on the basis of racial

---

[7]    While it is far from clear whether Mr. Trotter alleges that Mr. Quenzel's purported 2022 reference to Black senior newsroom employees as "them" created a hostile work environment, *see* Compl. ¶¶ 153–157, that alleged reference is non-actionable because it was isolated and bears no facial connection to any protected characteristic. *See Calise* v. *N.Y.S. Dep't of Motor Vehicles*, 2018 WL 4350247, at *7 (S.D.N.Y. Sept. 12, 2018) (dismissing hostile work environment claim based on alleged isolated references to Black employees as "brother," "sister," and "Brother Malcolm" because "these comments are certainly not insults, nor were they directed at plaintiff").

discrimination.  *Cardwell*, 2020 WL 6274826, at *21.  And to the extent that he intended for his hostile work environment allegations, such as the stray remarks allegedly made by Mr. Pegula and Mr. Jones, to support his NYCHRL claims, those "sporadic events, none of which was personally abusive" to Mr. Trotter, do not amount to "pervasive incidents of discrimination" sufficient to sustain such a claim.  *See Fincher* v. *Depository Tr. & Clearing Corp*., 604 F.3d 712, 724 (2d Cir. 2010) (dismissing NYCHRL claim based on hostile work environment theory).

III.   **Mr. Trotter's NYSHRL and NYCHRL Claims Should Be Dismissed For Failure to Allege the Requisite Impact in New York State and New York City**

Mr. Trotter's NYSHRL and NYCHRL claims should be dismissed for the additional, independent reason that Mr. Trotter fails to adequately plead that the alleged retaliation and discrimination had an impact in New York State and New York City, respectively.  *See Hoffman* v. *Parade Publ'ns*, 15 N.Y. 3d 285, 291 (2010) (a non-resident asserting an NYSHRL claim "must plead and prove that the alleged discriminatory conduct had an impact in New York"); *Vangas* v. *Montefiore Med. Ctr.*, 823 F.3d 174, 183 (2d Cir. 2016) (a non-resident asserting an NYCHRL claim must show that "the impact of the employment action [was] felt by the plaintiff in NYC").

Mr. Trotter, a California resident who worked for the NFL in California, *see* Compl. ¶ 18, cannot meet either standard because he fails to plead the impact of the alleged retaliation or discrimination in New York.  To do so, Mr. Trotter would need to allege that the discriminatory conduct took place in New York or that he experienced it there.  *See Hoffman*, 15 N.Y. 3d at 291–92.  Mr. Trotter does neither.  He asserts that "the NFL league office is located in New York City" and (in conclusory fashion) alleges that "decisions related to his employment and termination were made in New York City."  *Id.* ¶¶ 233, 237.  But even if he alleged factual allegations in support of those assertions, which he does not, those would not satisfy the requisite impact test because "it is insufficient to show that [a defendant's] headquarters are located in New York City" or even "that

the decision to terminate [the plaintiff's] employment was made in New York City." *Fried* v. *LVI Servs., Inc.*, 2011 WL 4633985, at *13 (S.D.N.Y. Oct. 4, 2011) (dismissing NYCHRL claims where plaintiff alleged that the decision to terminate his employment was made in New York City because plaintiff failed to show that the allegedly discriminatory acts occurred or impacted him in New York City). "[T]he success or failure of an NYCHRL claim should not be solely dependent on something as arbitrary as where the termination decision was made," and a rule to the contrary would be "impractical, would lead to inconsistent and arbitrary rules, and expand[] NYCHRL protections to nonresidents who have, at most, tangential contacts with the city." *Hoffman*, 15 N.Y.3d at 289–91 (holding that plaintiff failed to plead requisite impact under NYSHRL and NYCHRL even though the defendant company was headquartered in New York City, plaintiff attended quarterly meetings in New York City, the defendant company managed plaintiff from New York City, and the decision to terminate plaintiff was made and executed in New York City).[8]

Mr. Trotter's other alleged theory of impact in New York—that he at times worked and stayed overnight in New York City, *see* Compl. ¶¶ 233, 237—is similarly insufficient to establish the impact of his state and city discrimination claims because Mr. Trotter does not allege a single specific discriminatory or retaliatory act that he claims took place while he was in New York. *See E.E.O.C.* v. *Bloomberg, L.P.*, 967 F. Supp. 2d 816, 865 (S.D.N.Y. 2013) ("[P]ointing to a few occasions in which a claimant performed some work in New York and evidence that certain adverse actions were executed from New York is insufficient to show that the alleged discriminatory events had an impact in New York."). Nor does Mr. Trotter allege that he

---

[8]    For the same reasons, the fact that Mr. Trotter's employment contract contains a New York choice-of-law provision, *see* ECF No. 22, at 3 n.4, does not establish the requisite impact in New York. *See Pedroza* v. *Ralph Lauren Corp.*, 2020 WL 4273988, at *3–4 (S.D.N.Y. July 24, 2020) (dismissing NYSHRL and NYCHRL claims due to a failure to establish an impact in New York even though plaintiff alleged that the impact requirement was met on grounds that "[defendant] chose New York as its choice-of-law in its severance agreement").

personally felt the impact of the alleged discrimination while he was in New York.  Absent such allegations, and the Complaint contains none, Mr. Trotter's occasional work travel to New York cannot satisfy the impact test as a matter of law.  *See Vangas*, 823 F.3d at 182–83 (affirming dismissal of NYCHRL claim where plaintiff did not allege that she felt the impact of her termination in New York City).

## IV.  In the Alternative, the Court Should Decline to Exercise Supplemental Jurisdiction Over Mr. Trotter's NYSHRL and NYCHRL Claims

For the reasons set forth above, the NFL Defendants submit that Mr. Trotter's NYSHRL and NYCHRL claims should be dismissed with prejudice for failure to state a claim and failure to allege the requisite impact in New York.  But in the alternative, and if the Court agrees that Mr. Trotter's federal retaliation and discrimination claims must be dismissed for failure to state a claim, the Court should decline to exercise its supplemental jurisdiction over the state and city claims.

Generally, "when the federal claims are dismissed the 'state claims should be dismissed as well.'"  *In re Merrill Lynch Ltd. P'ships Litig.*, 154 F.3d 56, 61 (2d Cir. 1998) (quoting *United Mine Workers* v. *Gibbs*, 383 U.S. 715, 726 (1966)).  That is because "when 'all federal-law claims are eliminated before trial, [a] balance of [judicial economy, convenience, fairness, and comity considerations] . . . will point towards declining to exercise jurisdiction over the remaining state-law claims.'"  *Roman-Malone*, 2013 WL 3835117, at *9 (quoting *Carnegie-Mellon Univ.* v. *Cohill*, 484 U.S. 343, 350 n.7 (1988)).  Here, these values all counsel in favor of the Court declining to extend supplemental jurisdiction, particularly given that the Court has "not invested the resources necessary to resolve these non-federal claims" at this early stage.  *See Henry* v. *N.Y.C. Health & Hosp. Corp.*, 18 F. Supp. 3d 396, 413–14 (declining to exercise supplemental jurisdiction over NYSHRL and NYCHRL claims where federal claims were dismissed); *Lioi* v. *N.Y.C. Dep't of Health & Mental Hygiene*, 914 F. Supp. 2d. 567, 594–95 (S.D.N.Y. 2012) (same).

## <u>CONCLUSION</u>

For the foregoing reasons, the Complaint against the NFL Defendants should be dismissed in its entirety and with prejudice.

Dated:   New York, New York
       January 26, 2024

                                      PAUL, WEISS, RIFKIND, WHARTON &
                                          GARRISON LLP

                                      By:                */s/ Loretta E. Lynch*
                                        Brad S. Karp
                                        Loretta E. Lynch
                                        Brette Tannenbaum
                                        1285 Avenue of the Americas
                                        New York, New York 10019
                                        (212) 373-3000
                                        bkarp@paulweiss.com
                                        lelynch@paulweiss.com
                                        btannenbaum@paulweiss.com

                                      *Attorneys for the NFL Defendants*