**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**

JIM TROTTER,

                              Plaintiff,

 v.

THE NATIONAL FOOTBALL LEAGUE; NFL
ENTERPRISES LLC; AND NFL NETWORK
SERVICES, INC.,

                              Defendants.

C.A. No. 23-cv-08055-PAC

**ORAL ARGUMENT
REQUESTED**

**REPLY MEMORANDUM OF LAW IN SUPPORT OF
NFL DEFENDANTS' MOTION TO DISMISS THE COMPLAINT**

## **<u>TABLE OF CONTENTS</u>**

**Page**

PRELIMINARY STATEMENT ........................................................................................ 1

ARGUMENT ................................................................................................................... 2

I.    Mr. Trotter's Retaliation Claims Should Be Dismissed ........................................ 2

      A.    Mr. Trotter Cannot Allege that He Engaged in Protected Activity ........................ 2

      B.    Mr. Trotter Does Not Allege the Requisite Causal Connection ............................ 5

II.    Mr. Trotter's Discrimination Claims Should Be Dismissed .................................... 7

III.    Mr. Trotter's NYSHRL and NYCHRL Claims Should Be Dismissed.................... 9

IV.    The Court Should Deny Leave to Amend the Complaint ...................................... 10

## <u>TABLE OF AUTHORITIES</u>

**Page(s)**

**Cases**

*Cantley* v. *Ind. Univ. Health, Inc.*,
  2015 WL 5692511 (S.D. Ind. Sept. 28, 2015) ...........................................................................3

*Fincher* v. *Depository Tr. & Clearing Co.*,
  604 F.3d 712 (2d Cir. 2010)......................................................................................................8

*Flynn* v. *N.Y. State Div. of Parole*,
  620 F. Supp. 2d 463 (S.D.N.Y. 2009).......................................................................................5

*Ghorpade* v. *MetLife, Inc.*,
  2014 WL 7008954 (S.D.N.Y. Dec. 12, 2014) ...........................................................................9

*Gordwin* v. *Amazon.com Inc.*,
  2021 WL 5396086 (D. Ariz. Nov. 17, 2021)............................................................................3

*Green* v. *Mt. Sinai Health Sys., Inc.*,
  2019 WL 4392691 (S.D.N.Y. Sept. 12, 2019)...........................................................................5

*Islamic Soc'y of Fire Dept. Pers.* v. *City of N.Y.*,
  205 F. Supp. 2d 75 (E.D.N.Y. 2022) .......................................................................................10

*Lax* v. *City Univ. of New York*,
  2022 WL 103315 (2d Cir. Jan. 11, 2022) .................................................................................9

*Locicero* v. *N.Y.C. Transit Auth.*,
  2010 WL 5135875 (E.D.N.Y. Dec. 9, 2010) .............................................................................8

*Lyte* v. *South Central Connecticut Regional Water Authority*,
  482 F. Supp. 2d 252 (D. Conn. 2007).......................................................................................4

*In re Merrill Lynch & Co., Inc.*,
  273 F. Supp. 2d 351 (S.D.N.Y. 2003).....................................................................................10

*Moazzaz* v. *MetLife, Inc.*,
  2021 WL 827648 (S.D.N.Y. Mar. 4, 2021) ..............................................................................3

*Moccio* v. *Cornell Univ.*,
  889 F. Supp. 2d 539 (S.D.N.Y. 2012)....................................................................................4, 7

*Nidzon* v. *Konica Minolta Bus. Sols., USA, Inc.*,
  752 F. Supp. 2d 336 (S.D.N.Y. 2010).......................................................................................5

**Page(s)**

*Pang* v. *Cushman & Wakefield U.S., Inc.*,
  2023 WL 2644267 (S.D.N.Y. Mar. 27, 2023) .......................................................9

*Pedroza* v. *Ralph Lauren Corp.*,
  2020 WL 4273988 (S.D.N.Y. July 24, 2020) ......................................................10

*Powell* v. *Merrick Acad. Charter Sch.*,
  2018 WL 1135551 (E.D.N.Y. Feb. 28, 2018)........................................................6

*Rinaldi* v. *Nice, Ltd.*,
  2021 WL 827767 (S.D.N.Y. Mar. 4, 2021) ........................................................10

*Roman-Malone* v. *City of N.Y.*,
  2013 WL 3835117 (S.D.N.Y. July 25, 2013) .....................................................2, 8

*Shiber* v. *Centerview Partners LLC*,
  2022 WL 1173433 (S.D.N.Y. Apr. 20, 2022).......................................................9

*Soto* v. *Marist College*,
  2019 WL 2371713 (S.D.N.Y. June 5, 2019) ........................................................4

*Sykes* v. *Rachmutch*,
  2023 WL 2752865 (S.D.N.Y. Mar. 31, 2023) ......................................................8

*TechnoMarine SA* v. *Giftports, Inc.*,
  758 F.3d 493 (2d Cir. 2014)................................................................................10

*Thior* v. *JetBlue Airways, Inc.*,
  2016 WL 5092567 (E.D.N.Y. Sept. 19, 2016) .....................................................8

*Wimmer* v. *Suffolk Cty. Police Dep't*,
  176 F.3d 125 (2d Cir. 1999)..................................................................................3

**Statutes**

42 U.S.C. § 1981...................................................................................................5

## PRELIMINARY STATEMENT

The NFL Defendants demonstrated in their moving brief ("Mot.") that Mr. Trotter's claims have no legal basis and should be dismissed at the outset.  Mr. Trotter's Opposition ("Opp.") relies on rhetoric rather than law.  His brief—replete with mischaracterizations and belated revisions of his allegations and misstatements of the law—does nothing to salvage his fatally defective pleading.  The Complaint should be dismissed in its entirety and with prejudice.

*First*, the NFL Defendants have shown that Mr. Trotter fails to plead a retaliation claim. As a threshold matter, Mr. Trotter is unable to allege that he engaged in protected activity such that his employer could reasonably have understood that he was complaining of an unlawful employment practice to which he or anyone else was personally subjected.  His allegations that he raised concerns about what he perceived to be a lack of diversity in the NFL newsroom and "systemic discrimination" at the NFL are legally insufficient to have provided such notice.  To be clear, and contrary to Mr. Trotter's insinuations, this is not because the NFL is indifferent to such concerns, or seeks to punish those who oppose discrimination.  Far from it.  As Mr. Trotter's own allegations confirm, the NFL is deeply committed to diversity and inclusion, and consistently encouraged Mr. Trotter to express his views on these important issues.  But Mr. Trotter's attempt to recast his unrelated non-renewal as "retaliatory" simply because he expressed those views before his contract expired—including as part of his expected job responsibilities—finds no basis in the law.  The law is clear that a retaliation claim requires specific protected activity in the form of opposition to a particular unlawful employment practice or a specific individual subject to unlawful discrimination.  Mr. Trotter raised no such opposition.

Even if he had, Mr. Trotter still could not plead a retaliation claim because he does not, and cannot, allege a plausible causal connection between his alleged complaints and his non-renewal.  Recognizing that the vast majority of his allegations are too distant in time from his non-

renewal to raise an inference of causation, Mr. Trotter's Opposition focuses on his February 2023 questioning of the NFL Commissioner regarding NFL newsroom diversity, at a public press conference where has was working as a reporter, and a hodge-podge of other alleged interactions from that time period.  But Mr. Trotter's own allegations—including his admission that he posed the same questions to the Commissioner in the exact same setting one year earlier and continued to be supported in his work—defeat any causal inference raised by the temporal proximity of those events to his non-renewal.  No other allegations could supply that missing inference.

*Second*, the NFL Defendants have demonstrated that Mr. Trotter fails to plead a discrimination claim based on a hostile work environment.  Unable to identify any discriminatory conduct targeted at him personally, Mr. Trotter premises his hostile work environment claim on two alleged stray comments, a perceived lack of diversity in the NFL newsroom, and an alleged failure to investigate his general complaints about diversity.  Mr. Trotter offers no authority to support these theories of hostile work environment, and in fact the law forecloses such a claim.

*Third*, as shown in the NFL Defendants' moving brief, Mr. Trotter fails to sufficiently plead his NYSHRL and NYCHRL claims because he cannot allege the requisite impact in New York.  Mr. Trotter concedes as much in his Opposition, compelling dismissal of these claims.

## ARGUMENT

## I.   Mr. Trotter's Retaliation Claims Should Be Dismissed

### A.   Mr. Trotter Cannot Allege that He Engaged in Protected Activity

Mr. Trotter cannot state a claim for retaliation because he does not, and cannot, allege that he engaged in any protected activity.  Mot. 10–14.  His generic complaints about what he perceived to be a "lack of diversity" in the NFL newsroom and "systemic . . . discrimination" at the NFL generally, Compl. ¶ 1, are insufficient because they were not "taken in opposition to statutorily prohibited discrimination."  *Roman-Malone* v. *City of N.Y.*, 2013 WL 3835117, at *7 (S.D.N.Y.

July 25, 2013).  "Not every act by an employee in opposition to racial discrimination is protected,"
but rather "[t]he opposition must be directed at an unlawful employment practice of an employer."
*Wimmer* v. *Suffolk Cty. Police Dep't*, 176 F.3d 125, 135 (2d Cir. 1999).  Mr. Trotter's alleged
complaints did not identify any specific individual—including himself, Opp. 18 n.10—that he
believed the NFL Defendants failed to hire, failed to promote, or otherwise discriminated against
because of race, nor did he identify an unlawful pattern or practice of discriminatory hiring or any
fact that would suggest such an unlawful pattern or practice.  For example, Mr. Trotter relies on a
March 2, 2023 conversation with Sandra Nunez, a VP in the NFL's media group, in which he
allegedly "ask[ed] the NFL to live up to its publicly stated commitment to diversity, inclusion and
equity."  Opp. 7.  This is exactly the kind of generalized, ambiguous complaint that this Court
routinely rejects as protected activity, as shown by the many cases cited in the NFL Defendants'
moving brief that Mr. Trotter fails to meaningfully distinguish.  Mot. 11–13.  He does not, and
cannot, explain how any of his broad-brush grievances are any more specific than, for example,
the complaints about "gaps in [workplace] diversity" that this Court declined to recognize as
protected activity in *Moazzaz* v. *MetLife, Inc.*, 2021 WL 827648, at *13 (S.D.N.Y. Mar. 4, 2021).

Instead, Mr. Trotter simply insists that generic "complaints about a lack of diversity in the
workplace"—without an allegation that a discriminatory failure to hire or other unlawful hiring
practice was responsible for that alleged lack of diversity—can support a retaliation claim.
Opp. 12.  That misstates the law in this Circuit.  Of the four cases Mr. Trotter cites in support of
that proposition, two are out-of-circuit.  Opp. 12–13.[1]  And the single case he cites from this Court,

---

[1]   These cases are also either inapposite or distinguishable.  *See Gordwin* v. *Amazon.com Inc.*, 2021 WL 5396086,
at *7 (D. Ariz. Nov. 17, 2021) (court did not analyze issue of protected activity because not in dispute); *Cantley*
v. *Ind. Univ. Health, Inc.*, 2015 WL 5692511, at *2, *9 (S.D. Ind. Sept. 28, 2015) (finding protected activity
where plaintiff tied alleged lack of diversity to discriminatory employment practice, complaining that defendant
failed to promote her "because of her race," and identified two other African-American employees who were not
promoted).

*Soto* v. *Marist College*, is inapposite; there, the court did not need to decide whether comments about an alleged "lack of diversity" constituted protected activity because it dismissed the retaliation claim on other grounds.  2019 WL 2371713, at *10 (S.D.N.Y. June 5, 2019).[2]  Tellingly, Mr. Trotter does not cite a single controlling precedent where complaints about a perceived lack of diversity were considered protected activity when those complaints failed to suggest that any discriminatory intent or otherwise unlawful employment practice was responsible for that lack of diversity.

Mr. Trotter also argues that the questions he posed to Commissioner Goodell at the 2022 and 2023 Super Bowl press conferences constituted protected activity because he "drew a direct parallel" to Coach Brian Flores's lawsuit against the NFL and certain of its member clubs. Opp. 11.  That argument is hardly plausible.  Coach Flores's lawsuit, brought on behalf of a putative class of coaches (employed by the clubs, not the NFL), does not even allege a lack of diversity in the NFL newsroom or among any other group of individuals employed by the NFL. In any event, Mr. Trotter cites no case to support this "parallel" theory of protected activity, and the law is to the contrary.  *See Moccio* v. *Cornell Univ.*, 889 F. Supp. 2d 539, 584 (S.D.N.Y. 2012) (plaintiff's expressed "general support" for colleague's discrimination lawsuit was not protected activity).

Mr. Trotter's other allegations of "protected activity" fare no better.  Mr. Trotter contends that "complaints about unlawful retaliation" are themselves protected activity, Opp. 10, and cites an email he sent to Ms. Nunez on March 12, 2023, alleging that he was subject to a "pattern" of retaliation (ostensibly in response to his recent questions to the Commissioner) when he was

---

[2]    The remaining case, *Lyte* v. *South Central Connecticut Regional Water Authority*, is similarly inapposite.  There, the court determined that plaintiff's specific concerns about racial insensitivity and challenge of a supervisor on whether "she was racist" were protected activity only when analyzed together with formal complaints filed with a Connecticut administrative agency.  482 F. Supp. 2d 252, 258, 269 (D. Conn. 2007).

supposedly denied work opportunities and excluded from events.   Compl. ¶ 209.   Mr. Trotter claims this email was protected activity, leading to further retaliation in the form of his non-renewal.   Opp. 10.   This theory fails because only "complaints of retaliation *for protected activity*" qualify as protected activity.   *Flynn* v. *N.Y. State Div. of Parole*, 620 F. Supp. 2d 463, 489 (S.D.N.Y. 2009) (emphasis added).   As explained, Mr. Trotter's questions to the Commissioner were not *themselves* protected activity.   Mot. 11–12.   As such, any subsequent complaints alleging "retaliation" in response to those questions cannot constitute protected activity, either.

Finally, grasping at straws, Mr. Trotter argues that he engaged in protected activity when he complained about comments allegedly made by two owners of NFL member clubs.   Opp. 13–14.   Even if they had been made by his employer and directed at Mr. Trotter—and they were not—those alleged complaints cannot constitute protected activity because "stray" comments are "not, standing alone, an unlawful employment practice," especially where, as here, they are made by someone who is not alleged to be a decisionmaker with respect to the alleged adverse employment action.   *Green* v. *Mt. Sinai Health Sys., Inc*., 2019 WL 4392691, at *5 n.8 (S.D.N.Y. Sept. 12, 2019) ("[A] complaint about such a remark[] does not, without more, constitute protected activity."); *see Nidzon* v. *Konica Minolta Bus. Sols., USA, Inc*., 752 F. Supp. 2d 336, 351 (S.D.N.Y. 2010) (stray comments by non-decisionmaker did not provide inference of unlawful termination).

### B.   Mr. Trotter Does Not Allege the Requisite Causal Connection

Even if Mr. Trotter could allege that he engaged in protected activity, and he cannot, he still could not plead a retaliation claim because he fails to allege any causal connection between that alleged activity and his non-renewal, much less the but-for causation required under § 1981.

Recognizing that the vast majority of his alleged "protected activity" is too far removed in time from his non-renewal to raise an inference of causation, Mr. Trotter seeks to anchor his temporal proximity theory in "three specific instances of clearly protected activity" that he claims

occurred in the two months leading up to his non-renewal (none of which, as explained above, constitute protected activity):  his questions to Commissioner Goodell at the February 2023 Super Bowl press conference; his March 2, 2023 conversation with Ms. Nunez, during which he allegedly reiterated his concerns about diversity; and his March 12, 2023 email to Ms. Nunez claiming "a pattern" of retaliation against him.  Opp. 1, 7.  Pointing to the "close temporal succession" of these three events and his non-renewal, Opp. 11, Mr. Trotter contends that he can "plausibly allege causation" with allegations of "temporal proximity alone."  Opp. 15.

Mr. Trotter is mistaken.  Temporal proximity cannot supply the requisite causal inference where, as here, the other allegations in the complaint "actually undermine the inference" that the adverse employment action was taken "for discriminatory reasons."  *Powell* v. *Merrick Acad. Charter Sch.*, 2018 WL 1135551, at *7 (E.D.N.Y. Feb. 28, 2018).  With respect to his February 2023 press conference questions, any retaliatory inference that could be drawn from the timing of those questions is undercut by Mr. Trotter's own allegation that the NFL continued to support his work after he posed the same questions to the Commissioner a year earlier.  For example, following his 2022 question, Compl. ¶ 136, the NFL invited Mr. Trotter to participate in a "private, small group session" with key NFL Media decisionmakers and called on Mr. Trotter at the 2023 press conference knowing that he "planned to again ask Mr. Goodell" the same questions. *Id.* ¶¶ 153, 185–187.  Mr. Trotter's response to this—that retaliation need not be "prompt[]" in order to be actionable and that the NFL Defendants' "patience" with his complaints "wore out over time," Opp. 17—mischaracterizes the NFL Defendants' position, and is otherwise pure speculation.  To be clear:  It is Mr. Trotter's burden to allege facts that would support an inference of causation.  His admission that the NFL supported his work for so long after he first questioned the Commissioner forecloses any causal inference based on timing alone.  And none of the other

avenues for pleading causation are available to Mr. Trotter, because he cannot allege facts suggesting retaliatory animus after he first questioned the Commissioner, or the disparate treatment of fellow reporters who did not express similar views.[3]

Mr. Trotter's alleged March 2023 communications with Ms. Nunez also do not suggest causation. Crucially, Mr. Trotter alleges that the NFL was already contemplating his non-renewal prior to his March 2 conversation with Ms. Nunez—indeed, he alleges he was informed of this fact during that very conversation, Compl. ¶¶ 206–207—which precludes as a matter of law any inference that Mr. Trotter's non-renewal was a retaliatory response to that conversation, or to his subsequent March 12 email to Ms. Nunez. *See Moccio*, 889 F. Supp. 2d at 588 ("[An] employer's decision to proceed along the lines previously contemplated . . . is no evidence what[so]ever of causality."). Mr. Trotter also does not allege that Ms. Nunez was a decisionmaker with regards to his non-renewal, nor that any decisionmaker knew about these communications with Ms. Nunez.

## II.   Mr. Trotter's Discrimination Claims Should Be Dismissed

Mr. Trotter's discrimination claims—which Mr. Trotter now argues are limited to a hostile work environment claim, Opp. 18 n.10—also should be dismissed at the outset. As demonstrated in the NFL Defendants' moving brief, Mr. Trotter's allegations are so far removed from the kind of severe and pervasive conduct that rises to the level of a hostile work environment that his claim cannot proceed. Mot. 20–23.

The only factual allegations characterized as "discriminatory and/or hostile conduct" in the Complaint are the abovementioned comments allegedly made by two club owners, only one of which was made to (but not about) Mr. Trotter and the other Mr. Trotter heard secondhand from a

---

[3]   Mr. Trotter also raises that his contract was not up for renewal after he first questioned the Commissioner, Opp. 17, but he still cannot suggest causation given the encouragement he continued to receive after those questions.

co-worker.  Compl. ¶¶ 4–6, 116, 126–127.  Neither club employed Mr. Trotter, despite his attempts to lump them in with a large group of entities that he calls his "employer," Opp. 14, which renders the owners' alleged comments irrelevant.  And Mr. Trotter does not even address, let alone rebut, the multiple cases cited by the NFL Defendants holding that episodic stray remarks are not sufficiently severe or pervasive to establish a hostile work environment claim, especially where, as here, they were not directed at the plaintiff or made in his presence.  Mot. 21–22 (citing cases). Indeed, the only example of a "hostile work environment" that Mr. Trotter argues was directed at him personally is the NFL's supposed "directive[] not to speak" about the alleged comments by team owners.  Opp. 19.  Mr. Trotter fails, however, to allege that he was so directed *because of his race*, or that similarly situated white reporters were not so directed, as is required to support a discrimination claim.  *See Sykes* v. *Rachmutch*, 2023 WL 2752865, at *7 (S.D.N.Y. Mar. 31, 2023); *Roman-Malone*, 2013 WL 3835117, at *8.

Recognizing that these allegations are deficient, Mr. Trotter seeks to shore up his hostile work environment claim by tying it to "all the conduct about which [he] raised protected complaints," including an alleged lack of racial diversity.  Opp. 18–19.[4]  None of these allegations can plausibly suggest a work environment that is sufficiently severe or pervasive to alter the terms and conditions of Mr. Trotter's employment.  *See Fincher* v. *Depository Tr. & Clearing Co.*, 604 F.3d 712, 724 (2d Cir. 2010).  Neither an alleged "lack of diversity in the workplace" nor "forms of discrimination that are actionable in other ways," like a failure to hire or promote, "gives rise to a hostile work environment claim."  *Thior* v. *JetBlue Airways, Inc.*, 2016 WL 5092567, at *4 (E.D.N.Y. Sept. 19, 2016); *see Locicero* v. *N.Y.C. Transit Auth.*, 2010 WL 5135875, at *5

---

[4]   The Opposition improperly recharacterizes the allegations in the Complaint by claiming that Mr. Trotter "raised protected complaints" about a "failure to hire and promote Black employees."  Opp. 18.  But Mr. Trotter does not point to a single NFL employee, Black or otherwise, not hired or promoted because of race.

(E.D.N.Y. Dec. 9, 2010) (failure to hire and interview are "discrete instances of unlawful discrimination . . . different in kind from the repeated, harassing acts . . . contemplated by the hostile work environment theory").

Mr. Trotter's last grasp at a hostile work environment theory—that the NFL failed to investigate or address his general complaints of alleged discrimination, Opp. 19—is similarly legally deficient.  As Mr. Trotter himself concedes, *id.* at 19 n.11, courts routinely reject hostile work environment claims based on a failure to investigate or remedy discrimination, even in cases where the alleged discrimination was targeted directly at the plaintiffs themselves.  *See, e.g.*, *Lax* v. *City Univ. of New York*, 2022 WL 103315, at *2 (2d Cir. Jan. 11, 2022); *Pang* v. *Cushman & Wakefield U.S., Inc.*, 2023 WL 2644267, at *5 n.6 (S.D.N.Y. Mar. 27, 2023).  Here, where Mr. Trotter fails to allege *any* discriminatory action targeted specifically at him or anyone else (much less a failure to investigate such discrimination), dismissal is even more warranted.

## III.     Mr. Trotter's NYSHRL and NYCHRL Claims Should Be Dismissed

Mr. Trotter's NYSHRL and NYCHRL claims should be dismissed for the additional, independent reason that Mr. Trotter fails to adequately plead the requisite impact in New York. Mot. 23–25.  Unable to rebut the NFL Defendants' many cited authorities compelling that conclusion, Mr. Trotter concedes that nearly all of his allegations on this front—that the decision not to renew his contract was made in New York, that the NFL Defendants are based in New York, and that he occasionally worked in New York—are "generally" deemed "insufficient under the impact test."  Opp. 20.  Mr. Trotter nevertheless contends that "those analyses are typically conducted at summary judgment." *Id.*  Not so.  To the contrary, courts regularly reject claims for failure to plead the requisite impact at the motion to dismiss stage.  *See, e.g.*, *Shiber* v. *Centerview Partners LLC*, 2022 WL 1173433, at *3–6 (S.D.N.Y. Apr. 20, 2022) (no requisite impact even where employer was based in New York); *Ghorpade* v. *MetLife, Inc.*, 2014 WL 7008954, at *1,

*3 (S.D.N.Y. Dec. 12, 2014) (no requisite impact even where plaintiff was managed from New York and visited New York "several times" during employment).

As for Mr. Trotter's remaining theory of impact—that his employment agreement contained a New York choice-of-law provision, Opp. 20–21—Mr. Trotter cites no case suggesting that such a provision is sufficient at the pleading stage to satisfy the impact test. Nor does he meaningfully distinguish the NFL Defendants' cited authority establishing that a similar provision in a severance agreement does not give rise to the requisite impact. *See Pedroza* v. *Ralph Lauren Corp.*, 2020 WL 4273988, at *3–4 (S.D.N.Y. July 24, 2020); *see also Rinaldi* v. *Nice, Ltd.*, 2021 WL 827767, at *9 (S.D.N.Y. Mar. 4, 2021) (same with respect to non-solicitation agreement).

## IV.    The Court Should Deny Leave to Amend the Complaint

In a last-ditch attempt to avoid dismissal with prejudice, Mr. Trotter requests this Court's leave to amend. Opp. 21. The Court should deny that request. It is well settled that "[a] plaintiff need not be given leave to amend if [he] fails to specify . . . how amendment would cure the pleading deficiencies in [his] complaint." *TechnoMarine SA* v. *Giftports, Inc.*, 758 F.3d 493, 505 (2d Cir. 2014). Here, Mr. Trotter does not even attempt to make such a showing, and identifies no additional allegations that he could make in an amended pleading to render his claims plausible.

Regardless, Mr. Trotter's request for leave to amend should be denied because any amendment would be futile. *See Islamic Soc'y of Fire Dept. Pers.* v. *City of N.Y.*, 205 F. Supp. 2d 75, 86 (E.D.N.Y. 2022). Mr. Trotter's claims are precluded by the existing allegations in his Complaint, which acknowledge that Mr. Trotter was encouraged to be "outspoken[]" on "issues involving racial injustice," Compl. ¶¶ 93, 108, and undermine any plausible inference of retaliation or discrimination. These self-defeating allegations make clear that Mr. Trotter cannot "amend [his] complaint[] to plead legally sufficient claims," *In re Merrill Lynch & Co., Inc.*, 273 F. Supp. 2d 351, 392 (S.D.N.Y. 2003), and his request for leave should be denied.

## CONCLUSION

The Complaint should be dismissed in its entirety and with prejudice.

Dated:   New York, New York
         March 22, 2024

PAUL, WEISS, RIFKIND, WHARTON &
GARRISON LLP

By: _____ */s/ Loretta E. Lynch* _____
Brad S. Karp
Loretta E. Lynch
Brette Tannenbaum
1285 Avenue of the Americas
New York, New York 10019
(212) 373-3000
bkarp@paulweiss.com
lelynch@paulweiss.com
btannenbaum@paulweiss.com

*Attorneys for the NFL Defendants*

11