**EMPLOYMENT AGREEMENT FOR JIM TROTTER (THE "AGREEMENT")**

March 1, 2020

Jim Trotter

Dear Jim:

NFL Enterprises LLC ("NFL"), having an address at 345 Park Avenue, New York, New York 10154, agrees to employ Jim Trotter ("You") and you agree to accept such employment ("Employment"), in connection with various programming on NFL's television network (the "NFL Network"), the NFL Internet Network (e.g., NFL.com), and/or the NFL Digital Network (e.g., NFL NOW) (collectively, the "NFL Media Platforms") as determined by NFL and otherwise specified below (the "Programming"), upon the following terms and conditions:

1.   SERVICES.

(a)   You shall render unique, artistic and creative Services as described below, as such Services are customarily rendered in the U.S. television industry in a first class manner, to the best of your ability, at such times and locations as NFL shall reasonably require. The Services shall include, without limitation, in-studio, on-location or other meetings, photography, rehearsals, principal photography, looping, retakes, added scenes, main and end title shooting, content contribution, and publicity and promotional activities as NFL may reasonably require. In connection therewith, you shall promptly and faithfully comply with all reasonable instructions, directions, requests, rules and regulations made or issued by NFL, and perform and render the Services conscientiously.

(b)   During the Term (as defined below), you shall render on-camera services on Programming as reasonably required by NFL (the "Services"), including, but not limited to, the following: (i) NFL football related programming (e.g. – *NFL Fantasy Football*, *Around the League, Total Access*, *Good Morning Football, Inside Training Camp*, etc.); and (ii) NFL event programming (including, but not limited to NFL game broadcasts, NFL Super Bowl, NFL Combine, NFL Draft, and/or NFL features). The dates of the Services shall be determined by the NFL after good faith consultation with you. You will also participate in selected podcasts, chats, video interviews, other online written programming (e.g. - blogs, rankings, articles, etc.) on NFL Programming or the NFL Internet Network (including, but not limited to, NFL.com), the NFL Digital Network (e.g. – *Trendzone*, etc.), and other various social media outlets (e.g. – Twitter), as reasonably required by NFL after good faith consultation with you.

(c)   You agree that your employment hereunder is on an exclusive basis, however, you may provide third party services if such third party services (i) do not conflict with the scheduling of your Services to NFL, (ii) are not morally offensive, in poor taste, or shocking or offensive as reasonably determined by NFL and (iii) are approved in advance in writing by the NFL. You shall perform all Services required under this Agreement on a first priority basis at all times during the Term. In addition to your obligations under the NFL compliance plan, you agree that during the Term you shall not directly or indirectly engage in or participate as an officer, employee, director, agent of or consultant for any business competitive with that of NFL, nor shall you make any investments in any such company or business competing with the NFL.

      (d)      The Parties agree that (i) the Services to be furnished hereunder are special, unique, extraordinary, artistic and intellectual; (ii) you will be engaged in work that is original and creative in character in a recognized field of artistic endeavor; and (iii) the result of your Services depends primarily on your invention, imagination and/or talent.  As a result, the Parties acknowledge and agree that your Services, and your employment hereunder, fall within the 'Creative Professional' exemption of Section 13(a)(1) of the Fair Labor Standard Act, as defined by Regulations 29 C.F.R. § 541.

2.    TERM.

    (a)    Unless terminated early in accordance with this Agreement, the "<u>Initial Term</u>" of your engagement hereunder shall commence on April 1, 2020 and continue through March 31, 2023. During the Term, each period beginning on April 1 and ending on March 31 shall be referred to as a "Contract Year".

    (b)    If this Agreement has not been earlier terminated, for a period of ninety (90) days commencing on January 1, 2023 (the "<u>Negotiation Period</u>"), you shall enter into good faith exclusive negotiations with NFL with respect to the terms and conditions of a continuation of your Services hereunder. Subject to section 2 (c) below, if, you and NFL fail to reach an agreement relative to such an extension, after the Negotiation Period, you shall be free to negotiate with any third party regarding your post-Term services.

    (c)    If this Agreement has not been earlier terminated and notwithstanding section 2 (b) above, then until July 31, 2023, in the event you receive, a bona-fide offer from a third-party in connection with your services on any media property (including, without limitation, television, internet and wireless media) you agree to give NFL the opportunity to match the term and monetary consideration of such third-party offer (the "Third-Party Offer Terms").  You shall provide NFL with the Third-Party Offer Terms in writing and NFL will have ten (10) business days (the "Match Period") to either match or reject the Third-Party Offer Terms.  If NFL rejects or fails to match the Third-Party Offer Terms within the Match Period, you shall be free to enter into an agreement with such-third party on the Third-Party Offer Terms.

3.    COMPENSATION.  As full consideration to you for the Services to be rendered hereunder and for all of the rights granted by you hereunder, and provided you are not in breach or default hereunder, NFL will, subject to Section 6 below, pay you the following amounts in accordance with NFL's then-current payroll practices:



    (a)    ██████████████████████ ($█████████) during the first Contract Year.

    (b)    ██████████████████████ ($████████) during the second Contract Year.

    (c)    ██████████████████████ ($███████ during the third Contract Year.

4.    BENEFITS.

    (a)    Upon commencement of Employment with the NFL, you will be eligible to elect to participate in the CIGNA Affordable Care Act for the NFL health benefits plan, and the premiums

and other costs associated with that plan will be paid by the NFL. A summary of health benefits and an election form to participate in the plan will be provided to you, upon your request, after you commence your Employment.

(b) Upon commencement of your Employment with the NFL, you will also be entitled to a total of twenty-four (24) hours of paid sick leave each calendar year to be taken pursuant to and consistent with the California Paid Sick Leave Law.

(c) You will not be entitled to participate in the NFL Pension Plan or receive any other benefits or compensation not specifically identified and provided for in this Paragraph 4 or otherwise in this Agreement.

5. TRAVEL AND ACCOMMODATIONS.

(a) To the extent that you are required by NFL to travel in connection with the Services to be provided pursuant to this Agreement, NFL shall provide you with all necessary air and ground transportation to such locations at which Services are rendered hereunder, as well as all necessary hotel accommodations.

(b) NFL will reimburse you for all actual and necessary out-of-pocket expenses incurred by you in connection with your Employment hereunder that are properly documented, approved and in accordance with NFL's then-current policies or otherwise required by state law. All expenses must be approved in advance in writing by NFL. To receive reimbursement, NFL policy states, among other things, that all expense items require an automated receipt and expense reports must be filed on a monthly basis or after the completion of an individual business trip.

6. TERMINATION.

(a) *Termination for Cause*. NFL may, at its sole option, terminate this Agreement, or suspend you pursuant to this Agreement, forthwith for "cause" subject to the terms below, and NFL shall thereafter have no further obligations under this Agreement, including, without limitation, any obligation to pay Compensation or provide benefits under this Agreement; provided, however, you shall still be owed payments and NFL approved reimbursements due to you for Services performed prior to the effective date of such termination and benefits to the extent provided for by law. For purposes of this Agreement, termination of the Agreement for "cause" shall mean termination for: (i) dishonesty or fraud in NFL's sole determination, (ii) conviction of a felony, (iii) your willful unauthorized disclosure of confidential information, (iv) if you at any time materially breach this Agreement in NFL's sole determination (including, without limitation, your failure, neglect of or refusal to substantially perform your obligations hereunder) or a reasonable direction of the person or persons to whom you report, except in the event of your disability, (v) if you at any time knowingly act in a manner that is directly offensive to the decency, morality or social propriety of yourself, NFL, an exhibitor or sponsor of the Programming, or the National Football League, such that your continued employment hereunder could reasonably be expected to injure the reputation, or business of NFL, or if you knowingly become directly involved in any situation which degrades yourself, the National Football League, NFL or the exhibitor or sponsor of the Programming such that your continued employment hereunder could reasonably be expected to injure the reputation, or business of NFL (or the National Football League) in NFL's sole determination, or (vi) if you at any time violate the NFL employee handbook, or any of the

policies of NFL, which you have been given in writing, in NFL's sole determination, including without limitation any such violations that occurred prior to the date of this Agreement but which were reasonably unknown to NFL until after the date of this Agreement. Anything herein to the contrary notwithstanding, NFL will give you written notice prior to terminating the Agreement for cause (including, by way of example only, your material breach) setting forth the nature of any alleged breach or cause and the conduct required, if any, to cure such breach or cause. To the extent such breach or cause is curable, which shall be determined by NFL in its sole discretion, you shall have ten (10) business days from the giving of such notice within which to cure.

(b)     *Termination Without Cause*. NFL may terminate your employment hereunder without "cause" (as defined above) at any time during the Term by written notice to you. In the event that your employment is terminated without cause, you shall be entitled to receive, subject to applicable withholding taxes:

   (i)     Your Compensation as provided in Paragraph 3 until the end of the Term, payable in accordance with NFL's then effective payroll practices; and

   (ii)    Medical insurance coverage under COBRA for eighteen months following termination or, if earlier, the date on which you become eligible for medical coverage from a third party employer; during this period, NFL will pay an amount equal to the applicable COBRA premiums (or such other amounts as may be required by applicable law) (which amount will be included in your income for tax purposes to the extent required by applicable law); at the end of such period, you may elect to continue your medical insurance coverage at your own expense for the balance, if any, of the period required by law. Provided, however, the amount of any such payment provided for in (i) above shall be reduced by any compensation earned by you from a third person during the Term, which was not previously approved by NFL. The payments provided for in (i) above are in lieu of any severance or income continuation or protection under any NFL plan that may now or hereafter exist. The payments and benefits to be provided pursuant to this Paragraph 6(b)(ii) shall constitute liquidated damages, and shall be deemed to satisfy and be in full and final settlement of all obligations of NFL to you under this Agreement.

(c)     *Termination of Benefits*. Notwithstanding anything in this Agreement to the contrary (except as otherwise provided with respect to qualified medical insurance), coverage under all NFL benefit plans and programs will terminate upon the termination of your employment except to the extent otherwise expressly provided in such plans or programs or to the extent otherwise required by law.

7.    CONFIDENTIAL INFORMATION, ETC.

(a)     *Confidential Information*. You agree that you shall not, during the Term or at any time thereafter, use for your own purposes, or disclose to or for the benefit of any third party, any trade secret or other confidential information of NFL or any of its affiliates (other than with respect to your financial, business, or legal advisors and/or except as may be required by law, legal process, in order to enforce your rights pursuant to this Agreement, or in the performance of your duties hereunder consistent with NFL's policies) and that you will comply with any confidentiality obligations of NFL to a third party of which you have been made aware, whether

under agreement or otherwise. Notwithstanding the foregoing, confidential information shall be deemed not to include information which (i) is or becomes generally known or available to the public other than as a result of a disclosure by you or any other person who directly or indirectly receives such information from you or at your direction; (ii) was obtained by you prior to this Agreement or becomes available to you, in either case on a non-confidential basis from a source which was/is entitled to disclose it to you; or (iii) was independently developed by you without the use of the NFL's confidential information. Further, the parties acknowledge and agree that the specific terms and conditions of this Agreement are confidential and will not be disclosed to any third party (other than with respect to financial, business or legal advisors and/or except as may be required by law, legal process, in order to enforce a party's respective rights pursuant to this Agreement, or in the performance of your duties hereunder consistent with NFL's policies).

(b)     *Disclosures.* If a party is required (by oral questions, interrogatories, requests for information or documents, subpoena, civil investigative demand or similar process) to disclose such confidential information, the disclosure of which would be prohibited by this Agreement, such party shall promptly notify the other party of such request(s) so that the other party shall have full opportunity to seek an appropriate protective order and take other action as it deems appropriate at its sole expense for the protection of its confidential information.

(c)     *No Employee Solicitation*. You agree that, during the Term and for six (6) months thereafter, you shall not, directly or indirectly, knowingly, engage, employ, or solicit the employment of any person who is known to be, an employee of NFL.

(d)     *NFL Ownership*. The results and proceeds of your Services hereunder, including, without limitation, any works of authorship resulting from your Services during your employment with NFL and/or any of its affiliates and any works in progress, shall be "works made for hire" under US copyright laws and NFL shall be deemed the sole author and owner throughout the universe of any and all rights of whatsoever nature therein, whether or not now or hereafter known, existing, contemplated, recognized or developed, with the right to use the same in perpetuity in any manner NFL determines in its sole discretion without any further payment to you whatsoever. If, for any reason, any of such results and proceeds shall not legally be a "work made for hire" and/or there are any rights related to such results and proceeds which do not accrue to NFL under the preceding sentence, then you hereby irrevocably assign and agree to assign any and all of your right, title and interest thereto, including, without limitation, any and all copyrights, patents, trade secrets, trademarks and/or other rights of whatsoever nature therein, whether or not now or hereafter known, existing, contemplated, recognized or developed to NFL, and NFL shall have the right to use the same in perpetuity throughout the universe in any manner NFL determines without any further payment to you whatsoever. You shall, from time to time, as may be reasonably requested by NFL, do any and all things which NFL may deem reasonably necessary to establish or document NFL's exclusive ownership of any and all rights in any such results and proceeds, including, without limitation, the execution of appropriate copyright and/or patent applications or assignments. To the extent you have any rights in the results and proceeds of your Services that cannot be assigned in the manner described above, you unconditionally and irrevocably waive the enforcement of such rights against NFL, its affiliates and licensees. This Paragraph 7(d) is subject to, and shall not be deemed to limit, restrict, or constitute any waiver by NFL of any rights of ownership to which NFL may be entitled by operation of law by virtue of NFL or any of its affiliates being your employer.

(e)     *NFL Marks.*  You hereby acknowledge and agree that the name of the Programming and any further trademarks, trade names, logos and copyrights which identify or are associated with the National Football League (the "NFL Marks"), other than your identity, are the sole property of the NFL, NFL Properties LLC, the National Football League and/or its member professional football clubs (the "Member Clubs").  You further recognize the great value of the goodwill associated with the NFL Marks and acknowledges that such goodwill belongs to NFL, NFL Properties LLC and/or the National Football League and its Member Clubs, as the case may be, and that such NFL Marks have secondary meaning.  You finally agree that it will not during the Term of the Main Agreement or thereafter, attack the property rights of NFL, NFL Properties LLC, the National Football League, or its Member Clubs, whether severally owned or held in association as the NFL, in and to the NFL Marks.

(f)     *Litigation*.  You agree that, during the Term, for one (1) year thereafter and, if longer, during any pending litigation or other proceeding, (i) you shall not communicate with anyone (other than your own agents, advisors, representatives, attorneys and tax advisors and, except to the extent necessary in the performance of your duties hereunder) with respect to the facts or subject matter of any pending or potential litigation, or regulatory or administrative proceeding involving NFL or any of NFL's affiliates, other than any litigation or other proceeding in which you are a party-in-opposition, without giving prior written notice to NFL or NFL's counsel, and (ii) in the event that any other party attempts to obtain information or documents from you with respect to matters possibly related to such litigation or other proceeding, you shall promptly so notify NFL's counsel.

(g)     *Return of Property.*  All documents, data, recordings, or other property, whether tangible or intangible, including all information stored in electronic form, obtained or prepared by or for you or utilized by you in the course of your employment with NFL or any of its affiliates shall remain the exclusive property of NFL.  In the event of the termination of your employment for any reason, NFL reserves the right, to the extent permitted by law and in addition to any other remedy NFL may have, to deduct from any monies otherwise payable to you the following: (i) the full amount of any debt you owe to NFL or any of its affiliates at the time of or subsequent to the termination of your employment with NFL, and (ii) the value of any of NFL's property which you retain in your possession after the termination of your employment with NFL and NFL's written request that you return such property to a designated location and individual at your sole cost and expense. In the event that the law of any state or other jurisdiction requires the consent of an employee for such deductions, this Agreement shall serve as such consent.

(h)     *Non-Disparagement*. You acknowledge the great value of the goodwill associated with the NFL and the tremendous public respect and reputation for wholesomeness enjoyed by the NFL.  You agree that you shall not, during the Term, in any communications with any client of NFL or any of NFL's affiliates, included but not limited to Publicity and Marketing (as defined in Paragraph 12 below), knowingly and willfully disparage NFL or NFL's affiliates or any of their officers, directors, agents or employees.  Without limiting the foregoing, you shall not say or do anything while performing the Services that constitutes a political or religious statement or in any way indicates favoring one NFL team over another, that is not otherwise in furtherance of the Services. The foregoing notwithstanding, NFL acknowledges that in connection with the performance of your Services hereunder, you are expected to objectively report and comment on current information relative to the National Football League, its Member Clubs and its players, frequently including providing your personal opinion with regard to such matters.

(i)  *Injunctive Relief*. NFL has entered into this Agreement in order to obtain the benefit of your Services, which are of a special, unique, extraordinary, artistic and intellectual character which gives them a peculiar value, the loss of which cannot reasonably or adequately be compensated for in damages in an action at law. You acknowledge and agree that any violation of Paragraphs 7(a) through (h), or Paragraph 2 above, hereof will result in irreparable damage to NFL, and, accordingly, NFL may obtain injunctive and other equitable relief for any breach or threatened breach of such paragraphs, in addition to any other remedies available to NFL.

(j)  *Survival; Modification of Terms*. The parties' obligations under Paragraphs 7(a) through (i) hereof shall survive the termination or expiration of this Agreement, notwithstanding the termination of the Term pursuant to Paragraph 6 hereof or otherwise. Solely for the purposes of clarification and without limitation, the parties' obligations under Paragraphs 1 and 12(c) shall not survive termination or expiration of this Agreement. You and NFL agree that the restrictions and the remedies contained in Paragraphs 7(a) through (i) are reasonable and that it is your intention and the intention of NFL that such restrictions and remedies shall be enforceable to the fullest extent permissible by law. If it shall be found by a court of competent jurisdiction that any such restriction or remedy is unenforceable but would be enforceable if some part thereof were deleted or the period or area of application reduced, then such restriction or remedy shall apply with such modification as shall be necessary to make it enforceable.

8.  FORCE MAJEURE. If any of the obligations of any of the parties is hindered or prevented, in whole or in substantial part, because of a force majeure event, then the parties shall negotiate in good faith regarding a reasonable adjustment of their rights and obligations under this Agreement. A "force majeure event" shall mean causes beyond the control of the affected party including, but not limited to: an act of nature, inevitable accident, fire, weather, labor dispute, lockout, strike, riot or civil commotion, act of war, act or immediate threat of terrorism, epidemic, pandemic (i.e., COVID-19), failure of technical facilities, national day of mourning, emergency announcement or news bulletin, inability to obtain supplies, delays in transportation, embargos, or other reason beyond the control of the affected party that is generally regarded as force majeure.

9.  DEATH. If you die prior to the end of the Term, your beneficiary or estate shall be entitled to receive your Compensation and any NFL approved, unpaid expense reimbursements up to the date on which the death occurs.

10.  SECTION 317 AND 508 OF THE FEDERAL COMMUNICATIONS ACT. In connection with the production or preparation of the material hereunder, you represent that you have not accepted or given nor will you accept or give, directly or indirectly, any money, Services or other valuable consideration from or to anyone other than NFL for the inclusion of any matter as part of any film, television program or other production produced, distributed and/or developed by NFL and/or any of its affiliates.

11.  NAME AND LIKENESS. NFL and any and all financiers, distributors and exhibitors of the Programming shall have the irrevocable and non-exclusive right to use, and to authorize other to use any or all of, your name, likeness, voice, approved biography, or any other identifiable or protectable asset of yours (your "Likeness") solely in connection with the Programming, the NFL Media Platforms, the National Football League and in the advertising, publicizing and exploitation thereof, and in connection with the exercise of all ancillary, subsidiary, allied and incidental rights with respect thereto, in perpetuity, throughout the universe in any and all media, whether now known or hereafter developed; provided that

no such use shall be as an implied or direct endorsement of any product or service other than the Programming, the NFL Media Platforms (as defined above) and/or the National Football League. NFL shall not edit your name and likeness in a defamatory way.

12.     PUBLICITY AND MARKETING.

(a)     You shall participate in the presentation of commercial announcements on any programs for which your services are utilized, leads-into and leads-out of such announcements and preview, pre-game and post-game programs and you may be required to participate in the promotion of all NFL businesses, both audiovisual and otherwise, provided that you will not be required to endorse any third party's products or services or lend your voice for use in any third party's NFL licensed products except as otherwise specified herein or otherwise agreed to. You shall attend all rehearsals, program conferences and publicity photographic sessions, and participate in promotional shoots, functions, press conferences, sales promotion meetings or other events of a similar nature, subject to your professional availability, for which no additional compensation shall be paid other than reimbursement (or direct payment, if appropriate given the nature of the specific event) of your expenses in accordance with the provisions hereof.

(b)     You will not furnish or authorize the preparation of any advertising matter or publicity in any form relating to the Programming, your Services in connection therewith, NFL or its operations or personnel or any distributors or exhibitors of the Programming (and all episodes thereof), to or by any person other than NFL, without the prior written approval of NFL in each case. Notwithstanding the foregoing, you shall be permitted to make incidental, non-derogatory mentions of your engagement hereunder, after NFL's public announcement thereof.

(c)     You shall not render services in connection with any endorsement, sponsorship or promotion of any products, services, brands or charities (e.g., print/TV/radio media campaigns, personal appearances, satellite radio tours, etc.) ("Promotional Services") for any of the categories set forth on Schedule 1 (as such schedule may be updated by NFL from time to time) or for any products, services, or brands that are competitive (as reasonably determined by NFL) with the business interests of the NFL or any of their affiliated entities (e.g., NFL may object to you providing promotional services for a cable affiliate if such cable affiliate does not carry NFL Network or for a sponsor or advertiser that competes with an official NFL sponsor). To ensure compliance with this provision, you shall provide NFL with written notice of your intention to engage in any such Promotional Services as soon as possible. NFL shall use commercially reasonable efforts to notify you in writing whether NFL will approve the Promotional Services pursuant to this Paragraph 12(c). For clarity, you shall not enter into any agreement to provide Promotional Services for any products, services or brands without first receiving NFL's prior approval.

13.     CREATIVE AND BUSINESS DECISIONS. NFL shall have sole and complete control, in its discretion, over all creative and business aspects of the production, distribution, promotion and exploitation of the Programming (and all episodes thereof); provided, however, that you will utilize your original and creative skills to perform your Services at the direction of NFL, as defined in Paragraph 1(d) above

14.     WARDROBE. You acknowledge and understand that the NFL's policy prohibits any logos or other commercial identification, religious or political symbols or text from appearing on clothing, apparel, accessories, or the like, or on your person, during your performance of the Services hereunder. You shall

adhere to said policy while performing the Services. You shall provide, at your sole cost, your own attire in connection with performing the Services, which shall be in accordance with this Paragraph 14, and which shall be discussed with, and subject to the prior reasonable approval of the NFL, not to be unreasonably withheld.

15. EQUAL OPPORTUNITY EMPLOYER. You acknowledge that NFL is an equal opportunity employer. You agree that you will comply with NFL policies provided to you in writing and applicable federal, state and local laws prohibiting discrimination on the basis of race, color, creed, national origin, age, sex or disability.

16. NOTICES. All notices which either party may wish to serve or shall be required to serve on the other hereunder shall be in writing, and shall be served by personal delivery, reputable overnight delivery service, or by registered air mail, or other generally used means of electronic delivery (e.g., PDF scan/email), addressed to the respective parties at their addresses hereinabove set forth, with a copy of all notices to NFL to: Senior Vice President, Programming and Production, NFL Network & NFL.com, 10950 Washington Blvd., Suite 300, Culver City, CA 90232, and a copy of all notices to you. Either party hereto may from time to time designate by like notice a different address for such service. Notice given by personal delivery or by reputable overnight delivery service shall be deemed given on the date of delivery thereof. Notices sent by registered air mail shall be deemed given ten (10) days after the date of mailing thereof.

17. REPRESENTATIONS AND WARRANTIES; INDEMNITIES.

(a) You represent and warrant that (i) to the best of your knowledge any and all incidents, dialogue, characters, "gags", material, ideas, and other material written, composed, submitted, added, improvised, interpolated and/or invented by you are wholly original and will not knowingly infringe upon or violate any copyright or other rights of any person, and will not constitute a libel or slander of any person; (ii) you have not granted or purported to grant to any person nor will grant or purport to grant to any person any right or the option to acquire any right which, with the lapse of time or the giving of notice or otherwise, would or might conflict with the rights in and to the results and proceeds of your Services hereunder stated to be granted to NFL or which might impair or diminish the value of your Services to NFL hereunder; (iii) you are obligated to comply with the practices, procedures and policies of NFL (e.g., background checks, etc.) which will be provided to you in writing; and (iv) your Services shall satisfy the artistic and competency standards reasonably expected by NFL.

(b) You hereby indemnify and hold harmless NFL and NFL's licensees, representatives, successors, principals, parents, affiliates, agents, subsidiaries and assigns, including, without limitation, the National Football League, its Member Clubs, NFL Ventures, L.P. and its subsidiaries, NFL Ventures, Inc. ("NFL Entities"), and each of their affiliates, officers, directors, shareholders, agents, representatives and employees from and against any and all third party, loss, damages, costs and expenses (including reasonable outside attorneys' fees and costs) (i) sustained, paid or incurred by NFL or any of the foregoing in connection with any breach of any representation, warranty, covenant, or agreement made or entered into by you herein, including, but not limited to, your tax obligations with respect to the services provided hereunder, and (ii) arising out of the use of any materials, ideas, creations, and properties ("materials") whether or not required of you or furnished by you in connection with this Agreement or unauthorized acts done by you in

connection therewith, other than materials furnished, approved, or changed by NFL and changes made by NFL to materials supplied by you.

(c) NFL hereby indemnifies, defends, and holds you harmless, against any and all claims, loss, damages, costs and expenses (including reasonable attorneys' fees and costs) sustained, paid, or incurred by you based on, arising out of or relating to NFL's development, production or exploitation of the Programming, including "materials" furnished by NFL, except for matters as to which your indemnity applies or arising out of your grossly negligent acts or intentional omissions.

(d) NFL shall have the right, in NFL's sole discretion, to control the defense of any claim or proceeding to which NFL is a party. If NFL shall elect to control such defense, you may, at your sole expense, participate in the defense thereof. If NFL shall elect not to control such defense, NFL may nevertheless participate in such defense, at NFL's sole expense. Each party shall provide written notice to the other party of any claim to which the foregoing indemnity applies promptly following receipt of notice thereof and shall cooperate with the other party in the defense thereof (it being expressly understood that failure to provide such timely notice will not relieve the indemnifying party of its indemnification obligation except to the extent that such failure prejudices the indemnifying party's defense of the claim). The indemnified party shall cooperate with the reasonable requests of the indemnifying party in connection with any such defense, and the indemnifying party shall keep the indemnified party advised of all material developments. The indemnifying party shall not enter into a settlement of any claim without the prior written approval of the indemnified party, which shall not be unreasonably withheld or delayed.

18. ASSIGNMENT. This is an Agreement for the performance of personal services by you and may not be assigned by you or NFL except that NFL may assign this Agreement to any affiliate or any successor in interest to NFL provided NFL shall remain liable to you hereunder.

19. NEW YORK LAW. This Agreement and all matters or issues collateral thereto shall be governed by the laws of the State of New York applicable to contracts entered into and performed entirely therein. Any lawsuit or legal action brought hereon shall be brought in the state or federal courts sitting in New York County, New York.

20. NO IMPLIED CONTRACT. Nothing contained in this Agreement shall be construed to impose any obligation on NFL or you to renew this Agreement or any portion thereof. The parties intend to be bound only upon execution of a written agreement and no negotiation, exchange of draft or partial performance shall be deemed to imply an agreement. Neither the continuation of employment nor any other conduct shall be deemed to imply a continuing agreement upon the expiration of this Agreement.

21. ENTIRE UNDERSTANDING. This Agreement constitutes the entire understanding between the parties hereto concerning the subject matter hereof and shall not be amended, modified,

changed, renewed, extended or discharged except as specifically provided herein or by an instrument in writing signed by both parties hereto.

22.     VOID PROVISIONS.  If any provision of this Agreement, as applied to either party or to any circumstances, shall be adjudged by a court to be void or unenforceable, the same shall be deemed stricken from this Agreement and shall in no way affect any other provision of this Agreement or the validity or enforceability of this Agreement.

23.     SUPERSEDES PREVIOUS AGREEMENTS.  This Agreement supersedes and cancels all prior agreements, understandings, and drafts relating to your employment by NFL or any of its affiliates.

24.     COUNTERPARTS.  This Agreement may be executed in any number of counterparts and by the parties hereto in separate counterparts, each of which when so executed shall be deemed to be an original and all of which taken together shall constitute one and the same agreement.  Signatures sent by facsimile or by other commonly used electronic means (e.g., PDF) shall be deemed original signatures.

IF THE FOREGOING CORRECTLY SETS FORTH OUR UNDERSTANDING, PLEASE SIGN ONE COPY OF THIS LETTER AND RETURN IT TO THE UNDERSIGNED, WHEREUPON THIS LETTER SHALL CONSTITUTE A BINDING AGREEMENT BETWEEN THE PARTIES.

Very truly yours,

**NFL ENTERPRISES LLC**

By: _____ 6/1/2020
Mark Quenzel
SVP, NFL Media

**ACCEPTED AND AGREED:**

_____
Jim Trotter

Date: 5/28/2020

*I certify that all requirements of the Contract Policy have been complied with in the preparation and negotiation of this agreement.*

**Approved by Finance**

**APPROVED - NFL Legal & Business Affairs**

11

**SCHEDULE 1**

**PROHIBITED ADVERTISING CATEGORIES**

*(Note that examples listed within specific categories are provided for illustrative purposes only.)*

1. Contraceptives (e.g., condoms), except to the extent otherwise expressly permitted under the pharmaceutical category.

2. Dietary and/or nutritional supplements, products commonly referred to as "energy drinks", and other products that contain ingredients other than vitamins and minerals for which the FDA has established recommended daily intakes, or any substance prohibited pursuant to League policies. Health and nutrition stores are permitted, provided that they do not reference any dietary or nutritional supplements or products, energy drinks, or any prohibited substances.

3. Distilled spirits and flavored malt beverages (e.g., Smirnoff Ice, Bacardi Silver); however, traditional malt beverages (e.g., beer) and non-alcoholic malt beverages and wine are permitted, subject to specific League guidelines.

4. Establishments that feature nude or semi-nude performers.

5. Firearms, ammunition or other weapons; however, stores that sell firearms and ammunitions (e.g., outdoor stores and camping stores) will be permitted, provided they sell other products and the ads do not mention firearms, ammunition or other weapons.

6. Fireworks.

7. Gambling-related advertising, including, without limitation, advertising for any hotel, casino or other establishment that houses gambling regardless of whether the advertising references gambling, as well as any advertising that would violate the terms of the League's television agreements or policy on gambling advertising, except:

    a. general advertising from a state or municipal lottery, provided that such lottery organization does not offer any betting scheme that is based on real sporting events or performances in them; or
    b. general advertising from horse- or dog-racing tracks, or from state or municipal off-track betting organizations, provided that such horseracing, dog-racing or off-track betting establishment offers neither (i) betting schemes based on real sporting events (other than horse or dog races) or performances in them or (ii) casino games of any kind; or
    c. general advertising for tourist destinations, including Las Vegas, subject to the following:

        i. NFL APPROVAL: All such ads must be approved in advance by the NFL. Please send to NFL Broadcasting, to the attention of Cathy Yancy, for NFL review.

        ii. ADVERTISING ONLY: Only general advertising will be permitted (e.g., advertising units). Sponsorships, including, but not limited to, program segment sponsorships and other types of branded programming enhancements are prohibited. (For example, vegas.com ads in commercial breaks will be acceptable but a pre-game sponsorship or sponsored feature in NFL programming will not be permitted).

        iii. TOURISM DESTINATIONS ONLY: Only tourism destinations (e.g., Nevada, Las Vegas, Lake Tahoe) are permitted, subject to the terms hereof. The prohibition of ads for hotels, casinos and other institutions that house gambling will remain in place regardless of whether or not such ads explicitly reference gambling.

        iv. CONTENT: Ads may not contain any gambling references - audio or visual - or any other gambling imagery. (For clarity, ads for Las Vegas tourism may not contain images of slot machines, dice, cards, or a wide shot of Vegas strip and casinos but may contain images of golf, swimming pools, and performers). The content of the ads (audio and/or visual) must be "family friendly". Any suggestive ads or those showing or suggesting inappropriate activity (e.g., excessive use of alcohol, sexual adventures), or those that imply general misbehavior (e.g., "What happens in Vegas Stays in Vegas") will not be approved.

        v. ANCILLARY MENTIONS: Airline and other travel-related ads may now mention Las Vegas in an ancillary manner (e.g., "Fly Southwest Airlines from Los Angeles to Las Vegas for $59").

8. Illegal products or services.

9. Movies, video games and other media that contain or promote objectionable material or subject matter (e.g., overtly sexual or excessively violent material), as determined by the NFL.

10. Restorative or enhancement products (e.g., "male enhancement" products), except to the extent otherwise expressly permitted under the pharmaceutical category.

11. Sexual materials or services (e.g., pornography or escort services).

12

12. Social cause/issue advocacy advertising, unless otherwise approved in advance by the NFL. If approved, only general advertising will be permitted (e.g., advertising units). Sponsorships, including, but not limited to, program segment sponsorships and other types of branded programming enhancements are prohibited.

13. Tobacco products (e.g., cigarettes, cigars, pipe tobacco, chewing tobacco and snuff).

14. Advertisements for pharmaceutical products (both prescription and over-the-counter (non-prescription)) are permitted only under the following terms and conditions:

    (a) Only general advertising will be permitted (e.g., advertising units).
    (b) Sponsorships, including, but not limited to, program segment sponsorships and other types of branded programming enhancements are prohibited; provided that in limited circumstances sponsorships by over-the-counter pharmaceutical products may be permitted with the prior written approval of the NFL.
    (c) Categories of permitted/prohibited pharmaceutical products (both prescription and over-the-counter) may be modified by League at any time.
    (d) Advertising for over-the counter pharmaceuticals is generally permissible (provided they do not otherwise fall in a category listed above)
    (e) Advertising for prescription medications is permitted currently in only the following categories:
    - Aesthetic Products (e.g., Botox, Latisse)
    - Analgesics (Non-Opioid Only ) (e.g., Celebrex, Mobic)
    - Antibacterials (e.g., Zithromax, Levaquin)
    - Anticoagulants/Platlet Modifying Agents (e.g., Pradaxa, Plavix)
    - Anticonvulsants/antiepilepsy (e.g., Neurontin)
    - Antidementia / Alzheimer's Agents (e.g., Aricept)
    - Antidepressants / Anxiolytics (e.g., Cymbalta, Lexapro, Zoloft)
    - Antifungals (e.g., Diflucan)
    - Antigout Agents (e.g., Zyloprim)
    - Anti-Insomnia Agents (e.g., Lunesta, Ambien)
    - Anti-Inflammatory Agents (Non-Steroidal Only) (e.g., Deltasone)
    - Anti-Migraine Agents (e.g., Topamax, Treximet)
    - Antineoplastics/Oncology Agents (e.g., Rituxan, Gleevec)
    - Antiparasitics (e.g., Malarone, Stromectol)
    - Anti-Parkinson / Movement Disorder Agents (e.g., Requip, Mirapex)
    - Antispasticity Agents (e.g., Zanaflex)
    - Antivirals (e.g., Kaletra, Zovirax, Tamiflu)
    - Blood Glucose Regulators / Diabetes Medications (e.g., Januvia)
    - Cardiovascular Agents (including Cholesterol Reducing) (e.g., Lipitor, Cestor, Norvasc)
    - Dental and Oral Agents (e.g., Aphthasol)
    - Dermatological Agents (e.g., Taclonex)
    - Gastrointestinal Agents (including Inflammatory Bowel Disease Agents) (e.g., Nexium, Asacol)
    - Genitourinary Agents (including Erectile Dysfunction and Prostate Medications) (e.g., Flomax, Viagra)
    - Hair Renewal and Growth (e.g., Propecia)
    - Immune Suppressants / Immunomodulators (e.g., Humira, Orencia, Enbrel)
    - Metabolic Bone Disease Agents (including Anti-Osteoporosis Agents) (e.g., Boniva)
    - Multiple Sclerosis Agents (E.g., Betaseron, Ampyra)
    - Ophthalmic Agents (e.g., Restasis)
    - Oral Contraceptives (e.g., Loestrin 24)
    - Otic Agents (e.g., Auralgan)
    - Pancreatic Enzyme Replacement Agents (e.g., ZenPep)
    - Respiratory Tract Agents (Allergy and Asthma Medications) (e.g., Advair, Spiriva, Pulmicort)
    - Smoking Cessation Products (e.g., Chantix), but specifically not including "electronic cigarettes"
    - Vaccines (e.g., Gardasil, Fluvirin, Zostavax)
    (f) Advertising for medical devices is permitted currently in only the following categories:
    - Aesthetics (e.g., dermal fillers for facial wrinkles)
    - Cardiovascular (e.g., coronary stents)
    - Dental (e.g., dental implants)
    - Drug Delivery Devices (e.g., diabetes pumps)
    - Ear, Nose, and Throat (e.g., sleep disorder breathing products, hearing aids)
    - Ophthalmic (e.g., intraocular lenses for cataracts)
    - Orthopedic (e.g., knee/hip replacements)

END OF STANDARD TERMS AND CONDITIONS